2023 IL App (1st) 211173-U

No. 1-21-1173

Order filed February 24, 2023

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 16517 |
| | ) | |
| KENNY SCOTT, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE MITCHELL delivered the judgment of the court.
Justices Lyle and Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the summary dismissal of defendant's postconviction petition where defendant failed to allege a violation of his constitutional rights at sentencing as a matter of law.

¶ 2    Defendant Kenny Scott appeals the trial court's order summarily dismissing his postconviction petition at the first stage of proceedings. The issue on appeal is whether Scott's claim that his 52-year sentence for attempted murder and armed robbery violates the proportionate penalties clause of the Illinois Constitution has an arguable basis in law. For the reasons explained below, we affirm.

¶ 3    On the night of July 5, 2014, then 20-year-old Kenny Scott shot his girlfriend Shandel Wilson. Wilson was getting ready to go out with her friend Jenail White at the two-flat apartment where they both lived with White's mother, Veronica Morris. Before they left, Wilson asked Morris to accompany them downstairs because Scott was waiting outside the building. Scott was jealous: he wanted Wilson to spend the evening with him instead.

¶ 4    When the women exited their top-floor apartment, Scott confronted Wilson, causing the women to retreat inside. A short time later, Wilson and White attempted to leave again. Morris saw Scott returning through the front gates and warned him that if he did not leave, she would call the police. Scott did not heed her warning, and when Morris placed the call, Scott grabbed her cellphone. Morris gave chase, but Scott evaded her and quickly ended the call. As Morris walked back toward the apartment, Wilson and White began to yell because Scott was running toward the women, now with a pistol in his right hand. Morris turned to face Scott and grabbed onto his waist and arm as he ran through the walkway gate. Scott freed his arm and aimed the gun at Wilson and White. He fired the gun from 15 feet away, striking Wilson twice, once in each leg, as she ran through the front door. Scott fled the area before the police and paramedics arrived. Wilson underwent two surgeries to remove the bullets and to repair her fractured tibia. Police officers apprehended Scott one month later in Tennessee pursuant to a warrant issued in Illinois.

¶ 5    A jury subsequently convicted Scott of attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2014) and armed robbery (*id.* § 18-2(a)(2)). At sentencing, Scott's counsel produced an 18-page report prepared by Nicole Phinney, a social worker and staff mitigation specialist at the Cook County Public Defender's Office. The purpose of Phinney's report was to provide additional detail about Scott's past and social history and to explain how they might have

influenced his functioning and decision-making processes through his early adulthood. In aggravation, the trial court also weighed Scott's "long history of criminal history" and additional charges filed against him during his time in custody. Declining to "write [Scott] off and warehouse [him] forever," the trial court sentenced Scott to the statutory minimum terms—6 years for both attempted murder and armed robbery. *Id.* § 8-4(c)(1); 730 ILCS 5/5-4.5-25(a) (West 2014). A 25-year firearm enhancement applied to his sentence for attempted murder (720 ILCS 5/8-4(c)(1)(D)) and a 15-year firearm enhancement applied to his sentence for armed robbery (*id.* § 18-2(b)). Because the trial court found that Scott's crime resulted in severe bodily injury, his sentences run consecutively. 730 ILCS 5/5-8-4(d)(1) (West 2014). We affirmed his convictions and sentences on direct appeal. *People v. Scott*, 2020 IL App (1st) 180200, ¶ 1.

¶ 6     Scott filed a postconviction petition in June 2021, in which he alleged that his sentence violates the proportionate penalties clause of the Illinois Constitution because the trial court failed to consider how the evolving science of juvenile maturity and neurological development applied to him as a 20-year-old adult at the time of his crimes. Ill. Const. 1970, art. I, § 11; *Miller v. Alabama*, 567 U.S. 460 (2012); *People v. Harris*, 2018 IL 121932, ¶ 46. The trial judge, who had also presided over Scott's trial, found that the record positively rebutted Scott's claim and summarily dismissed his petition at the first stage. The court reasoned, "[T]he record reflects that the trial court specifically heard evidence and argument regarding this precise issue during sentencing." Scott then filed this timely appeal. Ill. S. Ct. R. 651 (eff. July 1, 2017).

¶ 7     Scott argues that his postconviction petition sets forth an arguable constitutional claim that his sentence violates the proportionate penalties clause because the mandatory firearm enhancements, which extend his sentence by 40 years, precluded the trial judge from fashioning a

shorter sentence tailored to the unique attributes of his youth. The State argues that the record reflects that the trial judge expressly weighed how Scott's age at the time of his crimes bore on his culpability, thus affirmatively rebutting his claim. At the first stage of proceedings, the circuit court independently assesses whether a petitioner has set forth the gist of a constitutional claim with an arguable basis in law and fact. See 725 ILCS 5/122-2.1(a)(2) (West 2020); *People v. Hodges*, 234 Ill. 2d 1, 11-12 (2009). We review the circuit court's summary dismissal of a postconviction petition *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 8    Scott's claim derives from the line of United States Supreme Court cases providing heightened protections for juveniles in sentencing under the eighth amendment. U.S. Const., amend VIII; *Miller v. Alabama*, 567 U.S. 460, 471 (2012) ("[C]hildren are constitutionally different from adults for purposes of sentencing."); see also *Graham v. Florida*, 56 U.S. 48, 82 (2010); *Roper v. Simmons*, 543 U.S. 551, 574-75 (2005). A juvenile's potential for impulsiveness and impetuosity diminishes the penological justifications for imposing the most severe sentence. *Miller*, 567 U.S. at 472. Thus, sentencing courts must weigh a juvenile's youth and attendant circumstances before imposing a natural life sentence or the functional equivalent. *Miller*, 567 U.S. at 489; *People v. Holman*, 2017 IL 120655, ¶ 40. Scott contends that the rationale of *Miller* applies with equal force to young adults, and our supreme court has suggested that young adults may raise *Miller* in postconviction challenges to life sentences under the proportionate penalties clause of the Illinois Constitution. *Harris*, 2018 IL 121932, ¶ 48; see also Ill. Const. 1970, art. 1, § 11 ("All penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.").

¶ 9 The procedural requirements of *Miller* do not apply, however, unless the trial court imposed a natural life sentence or the functional equivalent, which is a term of more than 40 years. *People v. Buffer*, 2019 IL 122327, ¶¶ 27, 41. Scott is not serving a life sentence, natural or *de facto*, as he acknowledges in his briefs.[1] Rather, Scott will have an opportunity for release before having served 40 years because of his eligibility for sentencing credit. See 730 ILCS 5/3-6-3(a)(2)(ii)-(iii) (West 2014). A juvenile sentenced to the same term as Scott would not have a viable claim under the proportionate penalties clause regardless of whether the sentencing court weighed his youth and circumstances. See, *e.g.*, *Dorsey*, 2021 IL 123010, ¶¶ 64, 74; *People v. Woods*, 2020 IL App (1st) 163031, ¶ 58 (juvenile failed to demonstrate prejudice to file a successive petition where a 25-year firearm enhancement did not result in a life sentence); see also *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 21 ("Clear from this trilogy of cases is that the Court was concerned with the most severe forms of punishment allowed under the Constitution, the death penalty and life without parole."). Thus, Scott plainly could not demonstrate that the sentencing scheme, as applied to him, violated the proportionate penalties clause in a claim premised on *Miller*.

¶ 10 Moreover, the record reflects that the trial judge *did* hear evidence about Scott's age and neurological development. Citing medical literature suggesting that adolescents who experience prolonged trauma, in some instances, have delayed brain maturation, Phinney opined in her report that "Scott's brain is in theory younger developmentally than his actual age." His counsel argued that "he still [is] in this cusp of age when *** his brain is still developing. The trial judge noted that young men's brains "are not finished developing [until] as late as 27 years old" before

---

[1] Although Scott alleged in his petition that he received a *de facto* life sentence in excess of 40 years, he abandons this claim on appeal. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

imposing the shortest possible sentence permitted under Illinois law. Scott did not challenge how the trial judge weighed his youth and circumstances or the application of the statutory enhancements on direct appeal. The Post-Conviction Hearing Act is limited to constitutional deprivations that were not and could not have been litigated at trial (*People v. House*, 2021 IL 125124, ¶ 15 (quoting *People v. Barrow*, 195 Ill. 2d 506, 519 (2001))), and Illinois law has long recognized that adolescents are different for the purpose of sentencing (*e.g.*, *People ex rel. Bradley v. Illinois State Reformatory*, 148 Ill. 413, 423 (1894)). Setting aside Scott's arguable forfeiture of his claim by failing to raise it on direct appeal, the trial judge's express consideration of how Scott's youth bore on his culpability in light of the evolving neuroscience positively rebuts Scott's allegations to the contrary.

¶ 11    Seeking to extend the procedural requirements of *Miller* to his sentencing despite not having received a life sentence, Scott nonetheless maintains that the firearm enhancements precluded the trial judge from fashioning a shorter sentence. For support, Scott relies on *People v. Womack*, 2020 IL App (3d) 170308, *People v. Barnes*, 2018 IL App (5th) 140378, and *People v. Aikens*, 2016 IL App (1st) 133578. But these authorities predate *Dorsey*, which effectively foreclosed any claim based on *Miller* and alleging a violation of the proportionate penalties clause where a defendant did not receive a life sentence. *Dorsey*, 2021 IL 123010, ¶¶ 64, 74. Following *Dorsey*, we have also rejected Scott's precise argument in *People v. Hilliard*, 2021 IL App (1st) 200112, ¶ 31 ("To accept defendant's suggested 'novel' application of *Miller* would require us to extract the substantive rule of *Miller* from its holding and apply only the supporting procedural requirement."). Granting substantial deference to the General Assembly's broad authority to prescribe penalties according to the severity of crimes, as we must (*Buffer*, 2019 IL 122327, ¶ 35),

we find no basis alleged in the petition to suggest that the firearm enhancements, as applied to Scott, are so cruel, degrading, or wholly disproportionate as to shock the conscience (*People v. Klepper*, 234 Ill. 2d 337, 348-49 (2009)).

¶ 12                                    ****

¶ 13    Because Scott is not serving a life sentence, his postconviction claim based upon *Miller* necessarily fails. Moreover, the record positively rebuts Scott's allegation that the trial judge failed to consider the characteristics of Scott's youth. For these reasons, Scott's postconviction petition has no arguable basis in law or fact, and we affirm the trial court's summary dismissal of his petition.

¶ 14    Affirmed.