**2023 IL 128186**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

_____

(Docket No. 128186)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
ANDRE HILLIARD, Appellant.

*Opinion filed November 30, 2023.*

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Cunningham, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, Andre Hilliard, filed a *pro se* postconviction petition alleging that the mandatory 25-year firearm enhancement added to his sentence was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11), in part because he was 18 years old when he committed the offense. The Cook County circuit court summarily

dismissed his petition, and the appellate court affirmed. For the reasons that follow, we affirm the judgment of the appellate court.

¶ 2                                    I. BACKGROUND

¶ 3        The facts of this case have been set forth in two prior appellate court decisions (2021 IL App (1st) 200112; *People v. Hilliard*, 2017 IL App (1st) 142951-U), and we summarize only the facts pertinent to our disposition.

¶ 4        Defendant was tried on one count each of attempted first degree murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2012)) and aggravated battery with a firearm (*id.* § 12-3.05(e)(1)). The charges arose from the shooting of Devaul Killingsworth on August 6, 2013. Before jury selection began, the circuit court ordered that defendant be removed from the courtroom because he had threatened people, become belligerent, and screamed. He was placed in a lockup where he could hear the proceedings. Defendant was given the option to return to the courtroom at any time during the proceedings but chose not to.

¶ 5        Devaul Killingsworth testified that at about 12:45 a.m. on August 6, 2013, he was visiting Tracy Chatman, his grandchildren's mother, in her public housing complex. Killingsworth was standing outside Chatman's door, talking to neighbors. The neighbors went inside their apartment, and Killingsworth was about to enter Chatman's apartment when he heard a noise and turned around. He saw defendant running toward him with a gun pointed at him. Defendant was Chatman's boyfriend and lived in the same housing complex. Killingsworth had previously only engaged in small talk with defendant and did not get along with him. Defendant fired two to five shots at Killingsworth from one to two feet away. Killingsworth lifted his arm to protect himself and ran. He fell down in a grassy area and did not see where defendant went. Killingsworth suffered two gunshot wounds to his arm, and an ambulance later transported him to the hospital. There, Killingsworth informed detectives that defendant shot him and identified defendant in a photo line-up. Killingsworth had surgery that involved implanting plates, rods, and pins in his arm. The surgeon could not remove all of the bullet fragments, and at the time of trial, Killingsworth could not use his arm to the same extent as before. After the police arrested defendant the following month, Killingsworth identified him in a physical line-up.

¶ 6     The jury found defendant guilty of attempted first degree murder and aggravated battery with a firearm. The jury also found that, while committing attempted murder, defendant personally discharged a firearm that caused great bodily harm.

¶ 7     The circuit court subsequently ordered a fitness examination of defendant based on his behavior in court. Dr. Nishad Nadkarni interviewed defendant three times but could not render an opinion on fitness because defendant refused to cooperate. Dr. Nadkarni stated that there was no objective evidence in collateral information or the examinations that demonstrated that defendant had a major mental illness or cognitive impairment. Dr. Nadkarni stated that defendant's behavior was consistent with malingering mental issues and that defendant did not show any impairments that would prevent him from understanding the charges or participating in the trial. Among the documents that Dr. Nadkarni reviewed were medical records of defendant's two hospitalizations in 2009, when he was 14 years old. The first time he received a discharge diagnosis of recurrent major depression, and the second time the discharge diagnosis was mood disorder. Following a fitness hearing, the circuit court found defendant fit for posttrial motions and sentencing.

¶ 8     Defendant declined to answer most questions in the preparation of his presentence investigation report (PSI). The report stated that defendant did not have a relationship with his father, had "graduated from elementary school" but had not attended high school, and self-reported that he suffered from a mental illness but did not want to discuss his mental health history. Defendant described his childhood as normal and denied any history of family abuse, substance abuse, or gang affiliation. Defendant had no criminal history.

¶ 9     At the sentencing hearing, neither party chose to present evidence in aggravation or mitigation, and defendant declined to make a statement in allocution. The circuit court found that the aggravated battery with a firearm charge merged into the charge of attempted first degree murder, for which it sentenced defendant to 15 years' imprisonment.[1]  The circuit court then stated, "On the proven allegation of personally discharging a firearm that proximately caused bodily harm to a

---

[1] The sentencing range for attempted first degree murder was between 6 and 30 years' imprisonment. 720 ILCS 5/8-4(c)(1) (West 2012); 730 ILCS 5/5-4.5-25(a) (West 2012).

person, the minimum on that is 25 years, is that correct, State?" The prosecutor answered in the affirmative, and the circuit court stated that it was sentencing defendant to the minimum of 25 years for the firearm enhancement.

¶ 10    On direct appeal, defendant argued, *inter alia*, that the mandatory 25-year firearm enhancement was unconstitutionally disproportionate as applied and that his total sentence of 40 years' imprisonment was excessive in light of his age and the absence of any prior criminal activity. *Hilliard*, 2017 IL App (1st) 142951-U, ¶ 1. Relying on *People v. Thompson*, 2015 IL 118151, the appellate court stated that the record was not sufficiently developed to address defendant's as-applied challenge but that he could raise the issue in a collateral proceeding. *Hilliard*, 2017 IL App (1st) 142951-U, ¶ 42. The appellate court held that the circuit court acted within its discretion in sentencing defendant to 40 years' imprisonment. *Id.* ¶ 58.

¶ 11    On September 19, 2019, defendant filed a *pro se* postconviction petition, which is the subject of the instant appeal. He argued that the 25-year firearm enhancement violated the eighth amendment of the United States Constitution (U.S. Const., amend. VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11) because its mandatory nature deprived the trial court of the ability to consider that defendant was only 18 years old at the time of the offense and had no prior criminal convictions. Defendant further stated in part:

    "The United States Supreme Court struck down mandatory natural life sentence[s] for juveniles as violative of the Eighth Amendment, noting that new scientific and social scientific studies showed that youth carries with it a lesser degree of culpability. The qualities that distinguish juveniles from adults do not disappear when an individual turn[s] 18, instead, petitioner['s] chronological age placed his cognitive abilities with those of 16-17 year [*sic*] which in turn mitigates his culpability."

¶ 12    Defendant alleged that evolving scientific research showed that the parts of the brain that govern impulsivity, judgment, and future planning continue to mature until people are in their early twenties, making young adults less morally culpable. Defendant further alleged that his PSI showed that he "had a troubling social history, where he did not have a relationship with his father and had not been

- 4 -

enrolled in school since the fifth grade."[2] Defendant alleged that there were several factors showing his rehabilitative potential, including that he had never been involved in a gang and had a close relationship with his mother and siblings.

¶ 13       The circuit court summarily dismissed the petition on the basis that defendant was not a juvenile at the time of the shooting and did not receive the harshest penalty possible.

¶ 14       The appellate court affirmed the circuit court's judgment. 2021 IL App (1st) 200112, ¶ 51. The court stated that defendant's as-applied challenge was rooted in a line of cases providing heightened protection for juvenile defendants in sentencing under the eighth amendment of the United States Constitution, which prohibits cruel and unusual punishment. *Id.* ¶ 21. In particular, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the United States Supreme Court held that the eighth amendment prohibits mandatory life sentences without parole for juveniles. 2021 IL App (1st) 200112, ¶ 21. The appellate court stated that this court expanded *Miller* protections beyond the context of mandatory life sentences to now include juveniles who receive *de facto* life sentences, which this court has defined as imprisonment of more than 40 years. *Id.* ¶ 22 (citing *People v. Buffer*, 2019 IL 122327, ¶ 40).

¶ 15       The appellate court further stated that defendant acknowledged that he did not have a viable eighth amendment claim under *Miller* because he was 18 years old at the time of the offense and not a juvenile but instead challenged his sentence under the proportionate penalties clause of the Illinois Constitution. *Id.* ¶ 23. It stated that in two cases, *Thompson*, 2015 IL 118151, and *People v. Harris*, 2018 IL 121932, this court recognized that young adults between ages 18 and 21 may rely on the evolving neuroscience regarding brain development in juveniles and its correlation to the underlying rationale in *Miller* to support an as-applied challenge under the proportionate penalties clause. 2021 IL App (1st) 200112, ¶ 25. The appellate court stated that what is clear from *Miller* and its progeny is that the claim must satisfy two threshold requirements: the defendant must be a minor or young adult offender, and he must have been sentenced to a natural or *de facto* life sentence. *Id.* The appellate court held that, because defendant did not receive such a sentence, *Miller*'s procedural protections were not required and he did not state the gist of a

_____

[2]At oral argument, defendant's counsel stated that he had only an "eighth grade education."

constitutional claim that his sentence violated the proportionate penalties clause. *Id.* ¶ 50. The court held that the circuit court properly dismissed defendant's postconviction petition at the first stage of proceedings. *Id.*

¶ 16 We granted defendant leave to appeal. We allowed the MacArthur Justice Center and Northwestern's Legal Clinic's Children and Family Justice Center to file a joint *amici curiae* brief in support of defendant's position. See Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 17                              II. ANALYSIS

¶ 18 The Post-Conviction Hearing Act (Postconviction Act) provides a means for individuals serving criminal sentences to assert that their convictions resulted from substantial denials of their constitutional rights. 725 ILCS 5/122-1 *et seq.* (West 2018); *People v. Addison* 2023 IL 127119, ¶ 18. The proceedings are not an appeal of the underlying judgment but rather a collateral attack on the judgment. *People v. Clark*, 2023 IL 127273, ¶ 38.

¶ 19 The Postconviction Act creates a three-stage process for adjudicating postconviction petitions. *Addison*, 2023 IL 127119, ¶ 18. The first stage has a low threshold and requires only that the petitioner plead enough facts to assert an arguable constitutional claim. *People v. Johnson*, 2021 IL 125738, ¶ 25. The court must liberally construe the allegations and accept them as true unless the record contradicts them. *Id.* If the court independently determines that the petition is "frivolous or is patently without merit," it must dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact, meaning that it relies on an indisputably meritless legal theory or a fanciful factual allegation. *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). If the court determines that the petition is not frivolous or patently without merit, the petition advances to the second stage of postconviction proceedings 725 ILCS 5/122-2.1(b) (West 2018). We review *de novo* the circuit court's summary dismissal of defendant's postconviction petition. *Hodges*, 234 Ill. 2d at 9.

¶ 20 The proportionate penalties clause states: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring

- 6 -

the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A statute violates the proportionate penalties clause if either the penalty is harsher than the penalty for a different offense containing identical elements (*People v. Sharpe*, 216 Ill. 2d 481, 521 (2005)) or "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community" (*People v. Miller*, 202 Ill. 2d 328, 338 (2002) (*Leon Miller*)). Defendant challenges the enhancement under the latter standard. Punishments satisfying this standard have not been delineated because "as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.* at 339. A court reviews "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." *Id.* at 340.

¶ 21  "[T]he legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences, even if such sentences restrict the judiciary's discretion in imposing sentences." *People v. Huddleston*, 212 Ill. 2d 107, 129 (2004). Still, the penalty must satisfy constitutional requirements. *Id.* A constitutional challenge to a statute may be either facial or as applied. *Harris*, 2018 IL 121932, ¶ 38. A facial challenge requires a showing that the statute is unconstitutional under any set of facts, whereas an as-applied challenge is dependent on the particular facts and circumstances of the challenging party. *Id.* A defendant bringing an as-applied challenge to a mandatory sentencing statute must ultimately overcome the presumption that the statute is constitutional by clearly establishing that the statute is invalid as applied to him. *People v. House*, 2021 IL 125124, ¶ 18.

¶ 22  This court has rejected facial constitutional challenges to the mandatory firearm enhancement. We stated that "it is neither cruel nor degrading, nor would it shock the moral sense of the community, to apply the 15/20/25-to-life enhancements to attempted first degree murder." (Emphasis omitted.) *Sharpe*, 216 Ill. 2d at 524 (citing *People v. Morgan*, 203 Ill. 2d 470, 488 (2003), *overruled on other grounds by Sharpe*, 216 Ill. 2d at 516-21). In *Morgan*, this court stated that the presence of firearms during an offense poses an extreme danger to both the intended victims and innocent bystanders. *Morgan*, 203 Ill. 2d at 488. The legislature enacted the enhancements to deter the use of firearms in the commission of offenses, and "we will not second-guess the legislature's determination that the protection of society

- 7 -

necessitates the imposition of severe penalties whenever a firearm is used in the course of an offense." *Id.* We pointed out in *Sharpe* that the legislature did not apply the enhancements to all felonies committed with firearms but, rather, to just some of the most serious felonies. *Sharpe*, 216 Ill. 2d at 526.

¶ 23   Defendant raises an as-applied challenge to the mandatory firearm enhancement rather than a facial challenge. Defendant argues that the appellate court's decision is contrary to the low pleading standards of first-stage postconviction proceedings. Defendant further argues that as-applied challenges under the proportionate penalties clause have never been limited to juveniles. He asserts that in *Thompson*, 2015 IL 118151, *Harris*, 2018 IL 121932, and *House*, 2021 IL 125124, all cases that referenced or discussed *Miller*, this court either encouraged or allowed young adults older than 17 to develop proportionate penalties challenges to mandatory sentencing statutes under the Postconviction Act.

¶ 24   In *Thompson*, the 19-year-old defendant received a mandatory life sentence instead of the death penalty. *Thompson*, 2015 IL 118151, ¶ 7. In appealing the dismissal of his petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), the defendant argued, among other things, that his sentence violated the eighth amendment of the United States Constitution, as applied to him, under *Miller*. *Id.* ¶¶ 17, 21. We held that the defendant forfeited his argument by raising it for the first time on appeal from the dismissal of his section 2-1401 petition but that he was not necessarily foreclosed from bringing his as-applied challenge in the circuit court through the Postconviction Act. *Id.* ¶ 44.

¶ 25   This court extended *Thompson*'s reasoning in *Harris* to an as-applied proportionate penalties challenge that the defendant first raised on direct appeal. *Harris*, 2018 IL 121932, ¶ 41. The 18-year-old defendant had been sentenced to a mandatory minimum aggregate term of 76 years' imprisonment. *Id.* ¶ 1. We stated that the record needed to be sufficiently developed in the circuit court through an evidentiary hearing and findings of fact to review the defendant's constitutional claim. *Id.* ¶¶ 39, 41.

¶ 26   In *House*, the defendant was 19 years old and was sentenced to a mandatory natural life term for murder, with additional consecutive terms for aggravated kidnapping. *House*, 2021 IL 125124, ¶¶ 5-6. We held that the appellate court erred in holding that his natural life sentence violated the proportionate penalties clause

as applied to him without a developed evidentiary record or factual findings on the issue. *Id.* ¶ 31.

¶ 27     Defendant interprets this court's precedent too broadly. Recently, this court cited *Thompson* and *Harris* in stating that "this court has not foreclosed 'emerging adult' defendants between 18 and 19 years old from raising as-applied proportionate penalties clause challenges to life sentences based on the evolving science on juvenile maturity and brain development." *Clark*, 2023 IL 127273, ¶ 87. We stated that "those cases addressed the possibility of a defendant raising a *Miller*-based challenge with respect to *mandatory* life sentences in *initial* postconviction petitions."[3] (Emphases in original.) *Id.* ¶ 88. Similarly, *House* also involved a mandatory life sentence and an initial postconviction petition. *House*, 2021 IL 125124, ¶¶ 5, 7. Here, defendant was 18 years old when he committed the crime and filed an initial postconviction petition, consistent with part of the aforementioned standards. However, the mandatory 25-year firearm enhancement was not a mandatory life sentence, and even with the discretionary sentence for murder added to the enhancement, defendant's total sentence was 40 years, less than what we have defined as a *de facto* life sentence for juveniles under *Buffer*. Thus, as defendant did not receive a mandatory life sentence, *Thompson*, *Harris*, and *House* do not provide support for his proportionate penalties claim, beyond the general principle that as-applied constitutional claims cannot ultimately succeed absent a sufficiently developed evidentiary record.

¶ 28     Defendant's citations of appellate court cases that have relied on *Thompson*, *Harris*, and *House* are not persuasive, as they are contrary to subsequent supreme court decisions and fail to recognize that our cases were directing the possibility of as-applied proportionate penalties clause postconviction challenges to young adults who received mandatory life sentences. In *People v. Ruiz*, 2020 IL App (1st) 163145, ¶¶ 1, 18, the trial court imposed a discretionary 40-year sentence on the 18-year-old defendant for first degree murder and a concurrent sentence for a lesser charge. The appellate court held that the filing of *Miller* provided the defendant cause for failing to raise his sentencing claim in an earlier postconviction proceeding (*id.* ¶ 29), but we subsequently held that "*Miller*'s announcement of a

---

[3]We note that the defendant in *Thompson* had already filed a postconviction petition and unsuccessfully sought leave to file a successive postconviction petition more than once. See *Thompson*, 2015 IL 118151, ¶¶ 9, 11-12.

new substantive rule under the eighth amendment does not provide cause for a defendant to raise a claim under the proportionate penalties clause" in a successive postconviction petition (*People v. Dorsey*, 2021 IL 123010, ¶ 74) and that *Miller* applies to neither discretionary sentences nor adults (*People v. Moore*, 2023 IL 126461, ¶ 38). Similar infirmities exist in *People v. Johnson*, 2020 IL App (1st) 171362, ¶¶ 1-2, 6 (19-year-old defendant with a discretionary life sentence found to have satisfied cause and prejudice test to file a successive postconviction petition); *People v. Minniefield*, 2020 IL App (1st) 170541, ¶¶ 1-3 (same as to 19-year-old defendant with a 25-year discretionary sentence and mandatory 25-year enhancement); *People v. Bland*, 2020 IL App (3d) 170705, ¶¶ 6, 14 (allowing successive postconviction petition to proceed for 19-year-old defendant with 71-year sentence); and *People v. Savage*, 2020 IL App (1st) 173135, ¶¶ 1-4 (initial postconviction petition for a 22-year-old defendant with a discretionary 85-year sentence).

¶ 29        Defendant argues that, contrary to the appellate court's decision here, application of the proportionate penalties clause had never been limited to only the harshest penalties. The State concedes that, insofar as the appellate court decision can be read as holding that an adult defendant cannot bring an as-applied challenge under the proportionate penalties clause to a sentence other than life, it does not accurately reflect the law. This concession is clearly correct, as a defendant may challenge a sentence of any length. See *People v. Fuller*, 187 Ill. 2d 1, 5-6 (1999) (as-applied challenge to Class B misdemeanor punishable by up to six months' imprisonment). The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences. Our above discussion relates to the improper reliance on *Thompson*, *Harris*, and *House* to support or advance a proportionate penalties clause claim in situations where their analysis does not apply, but these cases do not preclude a defendant from bringing such a claim or the court from considering the claim.

¶ 30        Defendant insists that he is relying on *Leon Miller* rather than *Miller* and its progeny. In *Leon Miller*, we held that a mandatory sentence of natural life violated the proportionate penalties clause when applied to the juvenile defendant, and we affirmed the circuit court's sentence of 50 years' imprisonment. *Leon Miller*, 202 Ill. 2d at 343. We stated that the convergence of the Illinois transfer statute, the accountability statute, and the multiple murder sentencing statute eliminated the

circuit court's ability to consider any mitigating factors such as age or degree of participation. *Id.* at 340. We held that the mandated penalty distorted the case's factual realities and did not accurately represent the defendant's personal culpability, such that it shocked the moral sense of the community. *Id.* at 341. Specifically, the defendant was 15 years old, had one minute to contemplate whether to participate in the incident, and stood as a lookout during the shooting but never handled a gun. *Id.*

¶ 31    Defendant maintains that his claim is not frivolous under the facts because the record contains arguable evidence about his immaturity and other mitigating factors. Defendant points to the medical documents showing that he stayed at a hospital for two separate two-week periods when he was 14, and he makes various arguments about his mental health. Defendant maintains that his lack of cooperation during the trial and PSI was further evidence of his immaturity, as was the offense's circumstances. Defendant asserts that his lack of a criminal record despite his troubling social history shows his potential for rehabilitation. Also, defendant argues that, even though Killingsworth was shot only in the arm, defendant received the same minimum penalty as if he had inflicted a near-fatal wound.

¶ 32    We do not consider defendant's arguments about his mental health, as we are limited to the allegations set forth in defendant's postconviction petition and he did not raise the issue of mental health. Defendant did compare his "cognitive abilities with those of 16-17[-year-olds]," but he did so in the context that his "chronological age" of 18 put him in the same category of younger individuals.

¶ 33    This court has described the outcome in *Leon Miller* as

"a rare convergence of several factors, including: the defendant was a 15-year-old juvenile who, by statute, was automatically transferred for trial as an adult; the defendant was tried under an accountability theory which, by statute, holds all participants with a common criminal design equally responsible; and the applicable multiple-murder sentencing statute does not allow consideration of the defendant's age or extent of participation in the crime." *Huddleston*, 212 Ill. 2d at 131.

As the State points out, *Leon Miller* is the only case in which this court has found a mandatory minimum penalty unconstitutionally disproportionate as applied to a particular offender.

¶ 34    The situation at bar is readily distinguishable from *Leon Miller*. Specifically, Leon Miller had moments to decide whether to help the accomplices and stood as a lookout during the subsequent shooting but did not touch a gun. *Leon Miller*, 202 Ill. 2d at 330-31, 341. In contrast, defendant acted alone, made a deliberate choice to approach Killingsworth, and fired multiple rounds at him without provocation. Crucially, *Leon Miller* was also a 15-year-old juvenile who received a mandatory life sentence, whereas defendant was an adult who received a partially discretionary sentence, and his total sentence did not amount to a life sentence. We further note our recognition in *Morgan* that the presence of firearms during an offense extends the danger to innocent bystanders (*Morgan*, 203 Ill. 2d at 488), and here defendant shot at Killingsworth in a public housing complex.

¶ 35    Defendant's status as an adult also distinguishes this case from the appellate court cases that he relies on finding mandatory firearm enhancements unconstitutional as applied under the proportionate penalties clause. See *People v. Womack*, 2020 IL App (3d) 170208, ¶ 3 (16-year-old defendant); *People v. Barnes*, 2018 IL App (5th) 140378, ¶ 1 (17-year-old defendant); *People v. Aikens*, 2016 IL App (1st) 133578, ¶ 17 (17-year-old defendant); *People v. Gipson*, 2015 IL App (1st) 122451, ¶ 4 (15-year-old defendant).[4]

¶ 36    Defendant argues that, apart from considerations of precedent, we should view his petition in light of legislation that shows society's evolving standard of decency. He highlights that effective January 1, 2016, Illinois courts have the statutory discretion to choose whether to impose the firearm enhancement on defendants who were juveniles at the time of the offense. 730 ILCS 5/5-4.5-105(b) (West 2022). Also, Illinois now offers parole review to defendants under 21 at the time of the offense after they have served 10 years, except for first degree murder and certain sexual crimes. *Id.* § 5-4.5-115. Defendant argues that debates for these statutes show a deliberate effort of the legislature to offer greater sentencing protection for individuals under 21 than the United States Supreme Court established in its own

---

[4]We express no opinion on the merits of these decisions.

eighth amendment jurisprudence. Defendant asserts that these laws represent our current moral compass and demonstrate that society no longer deems it acceptable to mandate the enhanced penalty in every case involving a youthful offender. Defendant argues that only two other states mandate a firearms enhancement similar to what he received, which he asserts shows an evolving standard of decency.

¶ 37        The State argues that, even after considering *Miller* and its scientific research, the legislature made a deliberate judgment that young adults who commit serious felonies with firearms should still receive the mandatory 25-year firearm enhancement. The State points out that, although the legislature chose to allow for parole review after 10 years for certain individuals who were under 21 at the time of their offenses, it also chose not to apply the new scheme retroactively. See *id.* § 5-4.5-115(b). The State argues that changes in firearm enhancement provisions in other states do not apply here and are not relevant to our community's moral sense. The State maintains that defendant's crime fits squarely within the serious conduct, degree of harm, and societal dangers that the General Assembly sought to address when it enacted the mandatory firearm enhancement.

¶ 38        We agree with the State that the legislative changes do not support defendant's as-applied challenge. The legislature's determination of a particular punishment for a crime in and of itself is an expression of the general moral ideas of the people. *People v. Coty*, 2020 IL 123972, ¶ 43. The legislature determined that courts should have the discretion to determine whether to impose the firearm enhancement on individuals who were juveniles when they committed their crimes (730 ILCS 5/5-4.5-105(b) (West 2022)), but the provision is not retroactive (*People v. Hunter*, 2017 IL 121306, ¶¶ 52-56). More pertinent here, the legislature made a deliberate choice not to extend this discretion to sentences for individuals who were adults at the time of their offenses.

¶ 39        The distinction between a juvenile and adult remains significant. The "Supreme Court has clearly and consistently drawn the line between juveniles and adults for the purpose of sentencing at the age of 18." *Harris*, 2018 IL 121932, ¶ 58. As the Supreme Court stated in *Roper v. Simmons*, 543 U.S. 551, 574 (2005):

"Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles

- 13 -

from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. For the reasons we have discussed, however, a line must be drawn. *** The age of 18 is the point where society draws the line for many purposes between childhood and adulthood."

Notably, though the legislature also determined that certain defendants who were under 21 at the time of their crimes will be eligible for parole review after 10 years, the legislature chose not to make the provision retroactive, such that the provision does not apply to defendant. The legislature's decision not to broaden the statute's reach to *all* defendants under 21 shows that it was implementing the legislation as a policy change rather than a reflection that the previous statutory scheme was abhorrent to the community's moral sense. Accordingly, the legislative changes do not aid defendant's position.

¶ 40     At the first stage of postconviction proceedings, we must take as true defendant's allegations that he "had a troubling social history, where he did not have a relationship with his father and had not been enrolled in school since the fifth grade." We also consider as true the allegations that, when defendant committed the offense, his brain was not yet fully developed because he was 18 years old and that he had rehabilitative potential as demonstrated by the absence of a criminal history, lack of gang involvement, and a supportive family. However, " ' "there is no indication [in our constitution] that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty." ' " *Coty*, 2020 IL 123972, ¶ 24 (quoting *Huddleston*, 212 Ill. 2d at 454, quoting *People v. Taylor*, 102 Ill. 2d 201, 206 (1984)). When defendant's allegations are considered in conjunction with the circumstances of the case, that defendant chose to fire multiple shots at Killingsworth at close range with no demonstrated provocation in an attempt to kill him, the imposition of the mandatory 25-year firearm enhancement, which brought his total sentence to 40 years, is not even arguably "cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." Rather, defendant's claim is frivolous and patently without merit because it has no arguable basis in law, such that the circuit court did not err in summarily dismissing defendant's petition.

- 14 -

¶ 41 Based on our resolution of this case, we do not address the State's other asserted bases for affirmance. We also considered defendant's remaining arguments and conclude that they lack merit.

¶ 42                                    III. CONCLUSION

¶ 43 For the reasons stated, we affirm the judgment of the appellate court upholding the circuit court's decision to summarily dismiss defendant's postconviction petition.

¶ 44 Judgments affirmed.