2024 IL App (1st) 232170-U

No. 1-23-2170B

Order filed February 9, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 0293201 |
| | ) | |
| Diontay Kimberley, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE ODEN JOHNSON delivered the judgment of the court.
Justices Hyman and C.A. Walker concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court abused its discretion by failing to state adequate reasons in its written order, as the Act specifically requires, regarding its finding that no condition or combination of conditions could mitigate the threat to the safety of the community.

¶ 2    Defendant-appellant Diontay Kimberley, by and through his attorney, brings this appeal under Illinois Supreme Court Rule 604(h) (eff. Sept. 18, 2023) challenging the trial court's order

entered on November 6, 2023, pursuant to what is commonly known as the Pretrial Fairness Act.[1]

Defendant was charged with first degree murder. and the initial bond hearing was held on February 11, 2022, which resulted in a "No Bail" order.  Upon the enactment of the Pretrial Fairness Act and subsequent petitions for release by defendant and for detention by the State, the trial court conducted a detention hearing and found clear and convincing evidence that the proof was evident and the presumption great that defendant committed a detainable offense.  The trial court also found that no reasonable set of circumstances could mitigate the danger of release.  Accordingly, the trial court granted the State's petition for pretrial detention and denied defendant's petition for release.  Defendant filed a timely notice of appeal on November 9, 2023, and a Petition to Grant Pretrial Release Under New Law on November 6, 2023. Defendant then filed a Notice in Lieu of Memorandum on January 5, 2023.  The State filed a memorandum in response. For the following reasons, we reverse and remand.

¶ 3                              BACKGROUND

¶ 4      A summary of the relevant evidence proffered by the parties during the hearing on the State's Petition for Detention is as follows: On May 19, 2021, at about 11:19 a.m., the victim Rondell Smith, was standing on the sidewalk outside of a Dunkin Donuts store.  At that time, a Dodge Journey vehicle pulled up along that same sidewalk and multiple gunshots were fired from the driver's side window, hitting the victim multiple times.  The vehicle had distinctive features such as a lone roof rack and distinctive rims. After the shooting, the vehicle exited the Dunkin

---

[1] In 2021, the General Assembly passed two separate acts that "dismantled and rebuilt Illinois's statutory framework for the pretrial release of criminal defendants." *Rowe v. Raoul*, 2023 IL 129248, ¶ 4 (discussing Pub. Act 101-652, § 10-255, 102-1104, § 70 (eff. Jan. 1, 2023) (amending 725 ILCS 5/art. 110) (the Pretrial Fairness Act) and Pub. Act 102-1104 (eff. Jan. 1, 2023) (the Follow-Up Act).

Donuts parking lot.  Emergency responders took the victim to the hospital where he ultimately died.

¶ 5    A police investigation resulted in the following circumstantial evidence.  About thirteen .40 caliber Smith and Wesson shell casings were in the drive-through of the Dunkin Donuts where the shooting occurred.  Upon reviewing the Dunkin Donuts video, multiple surveillance videos from private businesses, POD videos, and license plate readers, the police were able to track the vehicle's path for 15 minutes from the Dunkin Donuts to the Buddy Bear Car Wash a few miles away.  The video at the car wash shows the same vehicle pulling into the drive-through, 15 minutes after the shooting, and defendant leaning out of the driver's window and making a payment for the car wash.  The video also shows a gold bracelet on defendant's left wrist. The license plate readers along the route from Dunkin Donuts to Buddy Bear Car Wash revealed that the vehicle was registered to defendant's girlfriend.

¶ 6    Officers witnessed defendant getting into the vehicle in question on two separate occasions. Each time they tried to curb the vehicle, both when defendant was driving and when his girlfriend was driving, the vehicle fled, and the police decided to terminate pursuit. It was not until September 8, 2021, that Chicago Police Department (CPD) officers were able to apprehend defendant as he attempted to recover the vehicle, which had been towed by the Evergreen Police Department.

¶ 7    Upon arrest, defendant was in possession of three cellphones.[2]  Detectives were able to track the phones based on cellphone towers and discovered that defendant appeared in Will County Courthouse, for probation violation, and then went to the area of the Dunkin Donuts and ultimately

_____

[2] Defendant was acquitted of aggravated unlawful use of a weapon (AUUW) for a weapon that was also recovered upon his arrest.

went to Buddy Bear Car Wash. This information was further corroborated by the POD videos and surveillance videos. When arrested, defendant was wearing the same gold bracelet on his left wrist that was depicted in the car wash video.

¶ 8    Police also recovered a loaded handgun from defendant's person, as well as narcotics. Although police later learned that the firearm was not the same firearm that was used in the murder, a single .40-caliber Smith and Wesson shell casing found lodged in the base of the windshield of the vehicle did match the casings found at the scene of the shooting. Defendant was placed into custody at that time and was charged with unlawful use of a weapon by a felon, which he was ultimately acquitted of, after a jury trial. (21 CR 1304001),

¶ 9    By way of background, defendant had a 2017 felony, for defrauding a financial institution, for which he received two years' probation. He had a 2015 felony, for driving on a suspended or revoked license, for which he received two years' probation which was terminated unsatisfactorily. In 2008, defendant had a reduced armed robbery conviction for which he received boot camp. He also had six failures to appear, with the most recent being in 2017.

¶ 10    The pretrial services assessment reported a score of five on the new criminal activity scale, and a four on the failure to appear scale. The representative recommended maximum conditions and noted a response of "yes" to the violent criminal activity flag.

¶ 11    Defendant contended that the State's case was entirely circumstantial. There were no eyewitnesses, confessions, or admissions. The video from Dunkin Donuts does not have good resolution and the license place was not clear. The officers looked at the video and determined that the vehicle looked like a Dodge Journey and proceeded to look at other surveillance videos until they found a Dodge Journey and then tracked that license plate. Defendant also pointed out

that the State also had an alternative suspect who had a motive and who had previously threatened the victim. Additionally, there was a second person in the video at the car wash but there is no evidence that the prosecution interviewed or otherwise ascertained whether that person had information or was involved in the shooting.

¶ 12    The defense proffered the following facts in mitigation during the initial bail hearing: Defendant was 31 years old and a lifelong resident of Cook County. He resided with his grandmother in Chicago and had a child on the way. Defendant graduated from high school and earned an associate degree from Richard Daley Community College. At the time of the hearing, he was enrolled in school for welding and had worked construction for two years. At the detention hearing, defendant's counsel added that defendant had a 16-month-old daughter who was born during his incarceration and whom he had never met.

¶ 13    As an alternative to detention, defendant suggested that house arrest with GPS tracking would mitigate the potential danger of release.

¶ 14    The trial court ultimately found that, under the clear and convincing standard, proof is evident that defendant committed the offenses listed in the indictment. In its written order, the trial court found that defendant posed a real and present danger where "[t]he allegations involve a killing by use of a firearm on the city streets." The trial court indicated that it was troubled by the fact that, if proven true, defendant went to Will County court regarding a probation violation and then went right out and shot and killed someone in a public way. With respect to defendant's suggestion of GPS tracking, the trial court found:

> "I don't find that the GPS tracking that counsel suggests would be appropriate. I don't think
> it really allays the fears that I have here. The allegations contained in the indictment are

about a shooting in the public way that, thankfully, only—I mean, I don't want to say thankfully because someone did die, but more people could have died."

As such, the court did not find that GPS tracking, as suggested by defendant, would be appropriate and "no reasonable set of circumstances can mitigate the danger." Accordingly, defendant was detained under the Act.

¶ 15    Defendant's appeal was timely filed within 14 days, thereby conferring jurisdiction upon this court. In considering this appeal, we have reviewed the following documents that were submitted pursuant to Rule 604(h): the supporting common law record, report of proceedings, defendant's Notice of Pretrial Fairness Act Appeal, Petition to Grant Pretrial Release under New Law, Notice in lieu of Memorandum, and the State's response memorandum.

¶ 16                                    ANALYSIS

¶ 17    On appeal, defendant contends that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the qualifying offense of first degree murder; the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case; the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case, or defendant's willful flight; and, the trial court erred in its determination that no condition or combination of conditions would reasonably ensure the appearance of defendant for later hearings or prevent defendant from being charged with a subsequent felony or Class A misdemeanor.

¶ 18 The circuit court's determination regarding the dangerousness and or conditions of release is reviewed for an abuse of discretion. *People v. Simmons*, 2019 IL App (1st) 191253, ¶¶ 9, 15; *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 10. An abuse of discretion occurs when the decision of the circuit court is arbitrary, fanciful, or unreasonable, or when no reasonable person would agree with the position adopted by the circuit court. *Simmons*, 2019 IL App (1st) 191253, ¶ 9; *Vingara*, 2023 IL App (5th) 230698, ¶ 10.

¶ 19 Pretrial release is governed by Article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-1 *et seq* (West 2022)). Under the Code, all persons charged with an offense are eligible for pretrial release before conviction. 725 ILCS 5/110-2(a) (West 2022).

¶ 20 Pursuant to the Code, a defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2022). Upon the State's filing of a verified petition requesting denial of pretrial release, the State has the burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-2; 5/110-6.1(a)(1.5), (4), (8) (West 2022).

¶ 21 At all pretrial hearings, the prosecution has the burden of proving by clear and convincing evidence that any condition of release is necessary. 725 ILCS 5/110-2(b) (West 2022). In any order for detention, the court shall make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive

conditions would not avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or prevent the defendant's willful flight from prosecution. 725 ILCS 5/110-6.1(h)(1) (West 2022).

¶ 22    Section 110-6.1 of the Act (725 ILCS 5/110-6.1 (West 2022)) provides that all defendants shall be presumed eligible for pretrial release and the State has to prove by clear and convincing evidence that no condition or combination of conditions set forth in subsection (b) of Section 110-10 can mitigate the defendant's willful flight for offenses listed in paragraph (8) of subsection (a). That paragraph includes forcible felonies such as those that defendant is charged with.

¶ 23    First, defendant alleges that the State failed to prove by clear and convincing evidence that the proof is evident or the presumption great that defendant committed the offense charged, first degree murder, because the State's case is entirely circumstantial except for the purportedly matching shell casing that was found several months later in the windshield area of defendant's girlfriend's vehicle.  Defendant relies on the fact that there are no eyewitness identifications, no incriminating statements by defendant, no surveillance video that clearly shows the identity of the shooter or vehicle involved.  He also argues that the cellphone records only place defendant in the general area at the time.  There is no established motive, and the shell casing was found months later and there is a viable alternative suspect with motive to kill the victim, because according to the victim's sister,  the victim had an affair with the suspect's girlfriend, and the suspect made a statement consistent with future intent to kill the victim: "We don't beef on social sites, we just hit our target."

¶ 24    The State responds that defendant fails to offer an actual explanation of  "how it was unreasonable for the court to determine that the evidence was sufficient to meet the People's

burden to show that the proof was evident or presumption great that defendant committed the qualifying offenses." *Horne*, 2023 IL App (2d) 230382, ¶ 24. The State compares the instant case to *Horne*, where mere police synopsis and pretrial services bond report were sufficient to meet the State's burden.

¶ 25 We agree with the State. Here, the State's proffer consisted of much more, including highly technical video, photographs, cell tower evidence, a shell casing and subsequent flight when police tried to curb his vehicle. The police had surveilled the vehicle for a period of time and attempted to curb the vehicle before finally being able to arrest defendant. Accordingly, we find no abuse of discretion in the court's finding that proof was evident or presumption great that defendant committed the qualifying offenses.

¶ 26 Defendant next argues that the State failed to meet its burden of proving by clear and convincing evidence that defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific, articulable facts of the case because the State failed to establish any motive for the killing, or reason that defendant would have an intent to harm the victim, or others. Nor did the State establish that defendant posed a specific threat to any specific person or persons.

¶ 27 With respect to whether the defendant poses a real and present threat to the safety of any person or the community, the State relies on *People v. Stock*, where defendant discharged a firearm inside his own home with others present. 2023 IL App (1st) 231753. There the court found that the alleged behavior, "at a bare minimum was dangerous, and posed a threat to those around him." *Id.* The State essentially argues that, if the mere discharge in a defendant's private home poses a

threat, then surely first-degree murder in public, as we have here, posed a real and present threat to the safety of any person or the community.

¶ 28    We find the trial court's finding that the defendant poses a real and present threat to the safety of any person or the community reasonable where there is substantial evidence that could connect the defendant to a killing at a Dunkin Donuts store in broad daylight. *Cf. People v. Hillard*, 2023 IL 128186, ¶ 22 ("the presence of firearms during an offense poses an extreme danger to both the intended victims and innocent bystanders").

¶ 29    Next, defendant alleges that the State failed to meet its burden of proving by clear and convincing evidence, and the trial court erred in finding that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case, and defendant's willful flight, because there was no indication that defendant failed to appear in court.  On the day in question, defendant willfully appeared in Will County for a pending case and had no evidence of failure to appear in the Cook Conty case.  Further he points out that there was no explanation for why home confinement with GPS or electronic monitoring would not address any threat that defendant purportedly poses or that he poses a risk of willful flight.  The record shows defendant has strong family ties to Chicago, has employment history, and does not have the financial means to flee or conceal himself elsewhere.  Defendant also has a relative with whom he could live.

¶ 30    The State responds that a court may properly base a finding that no conditions can mitigate defendant's threat upon the same concerns supporting its finding that defendant does indeed present such a threat, citing *People v. Reed,* 2023 IL App (1st) 231834, ¶ 34. The State argues that the court expressly considered all the circumstances surrounding defendant's Will County

appearance prior to participating in murder which was the basis for the court's grave concern as to whether any conditions would mitigate the danger.

¶ 31     Here, the trial court based its decision to deny defendant pretrial release primarily on its determination that the allegations contained in the indictment concern a shooting in the public way that could have resulted in more people dying.  As such, the court determined that neither GPS nor any reasonable set of circumstances could mitigate the danger.

¶ 32     However, section 110-6.1(h) of the Code of Criminal Procedure of 1963 requires that the trial "court shall, in any order for detention: (1) make a written finding summarizing the court's reasons for concluding that the defendant should be denied pretrial release, including why less restrictive conditions would not avoid a real and present threat *** or prevent the defendant's willful flight." 725 ILCS 5/110-6.1(h)(1) (West 2022). In the case at bar, the written findings of the trial court merely state that the reason that there are no conditions that could mitigate the threat of harm was "[o]n the day of the alleged killing, [defendant] was in court on his probation matter in Will County."  The written order does not indicate that the trial court considered any alternatives to defendant's detention. Thus, we find that the written order denying pretrial release was an abuse of discretion and remand for consideration of detention alternatives and entry of an appropriate written order that complies with the Act, and which may or may not provide for detention.

¶ 33     Lastly, defendant states that a jury found him not guilty of aggravated use of a weapon by a felon (AUUW), stemming from the discovery of the single shell casing that was allegedly recovered from the external windshield area of the vehicle during his arrest.  However, as the State points out, no argument or authority was presented regarding the effect on the trial court's

detention order. Therefore, we merely consider this statement as additional background information.

¶ 34                                CONCLUSION

¶ 35    For the foregoing reasons, we reverse the order, entered November 6, 2023, of the Circuit Court of Cook County that required defendant's pretrial detention and remand to the trial court for further consideration of pretrial detention alternatives and entry of a written order that complies with the Act. Mandate shall issue instanter.

¶ 36    Reversed and remanded.