2024 IL App (1st) 211173-U

No. 1-21-1173

Order filed June 28, 2024

FIFTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 16517 |
| | ) | |
| KENNY SCOTT, | ) | Honorable |
| | ) | Kenneth J. Wadas, |
| Defendant-Appellant. | ) | Judge presiding. |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court.
Justice Lyle and Justice Navarro concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the summary dismissal of defendant's post-conviction petition where defendant failed to allege a violation of his constitutional rights at sentencing as a matter of law.

¶ 2    Defendant Kenny Scott appeals the trial court's order summarily dismissing his post-conviction petition at the first stage of proceedings. The issue on appeal is whether Scott's claim that his sentence violates the proportionate penalties clause of the Illinois Constitution has an arguable basis in law. The Illinois Supreme Court directed us to vacate our original judgment and consider the effects of its opinion in *People v. Hilliard*, 2023 IL 128186, on the issue of whether defendant may challenge his sentence under the proportionate penalties clause where his sentence

was not *de facto* life. *People v. Scott*, 470 Ill. Dec. 7 (2023). We have considered the issue in light of *Hilliard*, and for the reasons explained below, we affirm.

¶ 3                                     BACKGROUND

¶ 4     On the night of July 5, 2014, then 20-year-old Kenny Scott shot his girlfriend Shandel Wilson. Wilson was getting ready to go out with her friend Jenail White at the two-flat apartment where they both lived with White's mother, Veronica Morris. Before they left, Wilson asked Morris to accompany them downstairs because Scott was waiting outside the building. Scott was jealous: he wanted Wilson to spend the evening with him instead.

¶ 5     When the women exited their top-floor apartment, Scott confronted Wilson, causing the women to retreat inside. A short time later, Wilson and White attempted to leave again. Morris saw Scott returning through the front gates and warned him that if he did not leave, she would call the police. Scott did not heed her warning, and when Morris placed the call, Scott grabbed her cellphone. Morris gave chase, but Scott evaded her and quickly ended the call. As Morris walked back toward the apartment, Wilson and White began to yell because Scott was running toward the women, now with a pistol in his right hand. Morris turned to face Scott and grabbed onto his waist and arm as he ran through the walkway gate. Scott freed his arm and aimed the gun at Wilson and White. He fired the gun from 15 feet away, striking Wilson twice, once in each leg, as she ran through the front door. Scott fled the area before the police and paramedics arrived. Wilson underwent two surgeries to remove the bullets and to repair her fractured tibia. Police officers apprehended Scott one month later in Tennessee pursuant to a warrant issued in Illinois.

¶ 6     A jury subsequently convicted Scott of attempted first degree murder (720 ILCS 5/8-4, 9-1(a)(1) (West 2014) and armed robbery (*id.* § 18-2(a)(2)). At sentencing, Scott's counsel produced

an 18-page report prepared by Nicole Phinney, a social worker and staff mitigation specialist at the Cook County Public Defender's Office. The purpose of Phinney's report was to provide additional detail about Scott's past and social history and to explain how they might have influenced his functioning and decision-making processes through his early adulthood. In aggravation, the trial court also weighed Scott's "long history of criminal history" and additional charges filed against him during his time in custody. Declining to "write [Scott] off and warehouse [him] forever," the trial court sentenced Scott to the statutory minimum terms—6 years for both attempted murder and armed robbery. *Id.* § 8-4(c)(1); 730 ILCS 5/5-4.5-25(a) (West 2014). A 25-year firearm enhancement applied to his sentence for attempted murder (720 ILCS 5/8-4(c)(1)(D)) and a 15-year firearm enhancement applied to his sentence for armed robbery (*id.* § 18-2(b)). Because the trial court found that Scott's crime resulted in severe bodily injury, his sentences would run consecutively. 730 ILCS 5/5-8-4(d)(1) (West 2014). We affirmed his convictions and sentences on direct appeal. *People v. Scott*, 2020 IL App (1st) 180200, ¶ 1.

¶ 7     Scott filed a post-conviction petition in June 2021, in which he alleged that his sentence violates the proportionate penalties clause of the Illinois Constitution because the trial court failed to consider how the evolving science of juvenile maturity and neurological development applied to him as a 20-year-old adult at the time of his crimes. Ill. Const. 1970, art. I, § 11; *Miller v. Alabama*, 567 U.S. 460 (2012); *People v. Harris*, 2018 IL 121932, ¶ 46. The trial judge, who had also presided over Scott's trial, found that the record positively rebutted Scott's claim and summarily dismissed his petition at the first stage. On appeal, this court affirmed, holding that *Miller* did not apply because Scott was serving less than a *de facto* life sentence and that Scott's claims that the trial judge failed to consider his youth and that his sentence violated the

proportionate penalties clause had no basis in law. *People v. Scott*, 2023 IL App (1st) 211173-U. The Illinois Supreme Court subsequently issued a supervisory order directing us to vacate our order and reconsider our decision in light of *People v. Hilliard*, 2023 IL 128186, on the issue of whether Scott may challenge his sentence under the proportionate penalties clause where his sentence was not *de facto* life. *People v. Scott*, 470 Ill. Dec. 7 (2023). The parties submitted supplemental briefs to aid in our consideration.

¶ 8                                     ANALYSIS

¶ 9       The Post-Conviction Hearing Act provides defendants an opportunity to challenge their convictions on constitutional grounds. *People v. Buffer*, 2019 IL 122327, ¶ 12. At the first stage of post-conviction proceedings, the trial court reviews the petition and may summarily dismiss if the petition is frivolous or patently without merit, meaning it has no arguable basis in fact or law. *People v. Tate*, 2012 IL 112214, ¶ 9. We review the trial court's dismissal of a post-conviction petition *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 10      The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. This provision is commonly known as the proportionate penalties clause and provides "a limitation on penalties beyond those afforded by the eighth amendment" to the United States Constitution. *People v. Clemons*, 2012 IL 107821, ¶ 39. In asserting a violation of the proportionate penalties clause, "a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348 (2009).

¶ 11    In *Hilliard*, the defendant argued that the 25-year mandatory firearm enhancement added to his sentence was unconstitutional as applied to him under the proportionate penalties clause, because he was 18 at the time of the offense. *Id.* ¶ 1. Hilliard's challenge was based on *Miller*, as well as a trilogy of Illinois Supreme Court cases, *Harris*, 2018 IL 121932, *People v. Thompson*, 2015 IL 118151, and *People v. House*, 2021 IL 125124, that discussed *Miller*'s application to the proportionate penalties clause. *Id.* ¶ 23. The supreme court distinguished Hilliard's reliance on *Thompson*, *Harris*, and *House*, holding that those cases considered the possibility of an 18- or 19-year-old defendant raising a *Miller*-based challenge to a mandatory life sentence in an initial post-conviction petition, as opposed to Hilliard, who did not receive a mandatory or *de facto* life sentence. *Id.* ¶ 27. This impediment does not, however, foreclose a proportionate penalties challenge; a defendant of any age may challenge a sentence of any length. *Id.* ¶ 29. Nevertheless, the supreme court rejected Hilliard's as-applied challenge to the mandatory firearm enhancement, because the circumstances did not warrant a finding that the sentence was unconstitutionally disproportionate as applied to him. *Id.* ¶ 40.

¶ 12    Scott initially maintained a *Miller*-based claim based on his age and development at the time he committed the offense. Now, Scott abandons his *Miller*-based claim, acknowledging that "*Miller* applies to neither discretionary sentences nor adults." *Id.* ¶ 28 (citing *People v. Moore*, 2023 IL 126461, ¶ 38). Scott may still challenge his sentence under the proportionate penalties clause, regardless of his age or length of his sentence. *Id.* ¶ 29 ("The Illinois Constitution does not limit a proportionate penalties challenge to just juveniles or individuals with life sentences.").

¶ 13    Scott argues that at sentencing, the trial court failed to consider his personal history and rehabilitative potential, in violation of the proportionate penalties clause's "objective of restoring

the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Scott also argues that his sentence was so wholly disproportionate to the offense that it shocks the moral sense of the community. However, Scott's petition still fails to raise a viable constitutional claim.

¶ 14 Scott's first claim, that the trial court did not consider evidence of his upbringing, mental development, and rehabilitative potential at sentencing, is positively rebutted by the record. Phinney's mitigation report detailed Scott's childhood issues, struggles with mental health, and his continued brain development. The trial court explicitly stated that it considered all factors in aggravation and mitigation, making specific reference to Phinney's report and its "psychological interpretation based on how you act, based on what happened in your life." This expression by the trial court positively rebuts Scott's claim that it did not consider these issues in sentencing. Scott specifically argues that the trial court failed to recognize his rehabilitative potential, but "there is no indication in our constitution that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty." (Internal quotation marks omitted.) *Hilliard*, 2023 IL 128186, ¶ 40 (quoting *People v. Coty*, 2020 IL 123972, ¶ 24). Despite addressing the violent nature of Scott's crimes and his pattern of violence against women specifically, the trial court gave Scott the minimum possible sentence within its discretion, indicating a balanced consideration between retribution and rehabilitation. See *People v. Haley*, 2011 IL App (1st) 093585, ¶ 63.

¶ 15 Scott's reliance upon *People v. Hill*, 2022 IL App (1st) 171739-B, is misplaced. In *Hill*, the 15-year-old defendant challenged his 52-year sentence under *Miller*. *Hill*, 2022 IL App (1st) 171739-B, ¶ 1. This court rejected Hill's *Miller*-based proportionate penalties challenge because his sentence was not a *de facto* life sentence, but held that the trial court gave inadequate

consideration to expert behavioral testimony regarding Hill's susceptibility to pressure from older peers and his demonstrated rehabilitation during his 19-year incarceration. *Id.* ¶ 49. Unlike in *Hill*, Scott was an adult, he was the aggressor, and he was not pressured by influential peers to commit the crime. Further, the trial court expressly considered evidence of Scott's rehabilitative potential and found it was outweighed by the aggravation evidence.

¶ 16    Finally, Scott's sentence does not "shock the moral sense of the community" and is not disproportionate to the offense. As noted above, the trial court considered the minimum possible sentence, six years, to be "pretty high," and stated it was "not going to go above that." Even with the mandatory firearm enhancement, Scott received the lowest possible sentence he could have. Regarding the enhancement, the legislature's establishment of a particular punishment for a crime is "in and of itself [] an expression of the general moral ideas of the people." *Hilliard*, 2023 IL 128186, ¶ 38. Though courts have discretion in applying firearm enhancements to juvenile sentences, the General Assembly deliberately did not extend this discretion to adult offenders. *Id.* Moreover, like the defendant in *Hilliard*, Scott "chose to fire multiple shots at [the victim] at close range with no demonstrated provocation" and therefore "the imposition of the mandatory 25-year firearm enhancement *** is not even arguably 'cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community.' " *Id.* ¶ 40 (quoting *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002)).

¶ 17                              III. CONCLUSION

¶ 18    The record positively rebuts Scott's allegation that the trial judge failed to consider the characteristics of Scott's youth. After considering this appeal in light of *People v. Hilliard*, we conclude that Scott's sentence was not disproportionate to the offense. Consequently, we affirm the trial court's summary dismissal of his petition.

¶ 19    Affirmed.