2024 IL App (1st) 221664-U

No. 1-22-1664

THIRD DIVISION
March 20, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 12 CR 11343 |
| | ) | |
| MICHAEL BIRKS, | ) | Honorable |
| | ) | Margaret Ogarek, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE D. B. WALKER delivered the judgment of the court.
Justice Lampkin and Justice Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the second-stage dismissal of defendant's postconviction petition where his petition was untimely filed, and postconviction counsel substantially complied with the requirements of Supreme Court Rule 651(c).

¶ 2    Defendant Michael Birks appeals the circuit court's dismissal of his postconviction petition at the second stage. On appeal, defendant contends that he made a substantial showing that 1) his original counsel provided ineffective assistance by failing to inform defendant that the 10-year plea offer would expire if he did not accept it within a certain time period, and 2) subsequent

counsel was ineffective for allowing the 10-year offer to lapse. Defendant further contends that the delay in filing his petition was not due to his culpable negligence, and alternatively, the cause should be remanded for further second stage proceedings where his postconviction counsel did not comply with Rule 651(c). For the following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4      Defendant was charged by indictment with aggravated criminal sexual assault, aggravated domestic battery, kidnapping, aggravated criminal sexual abuse, aggravated battery, and unlawful restraint regarding an incident that occurred on May 27, 2012.

¶ 5      The evidence, established through stipulation, showed that Victoriana Osby and defendant attended a party on May 26, 2012, and returned to the Midway Inn Motel around 1:30 a.m. Osby fell asleep, but at approximately 4 a.m., defendant awakened her. He confronted her about text messages from her ex-boyfriend on her cell phone. He began to punch and choke her. He also bit her on the buttock. Defendant then forced Osby to perform fellatio on him. Osby sustained a fractured rib and numerous injuries across her body, face, and neck.

¶ 6      Defendant's private counsel, Salim Sheikh, filed an appearance on June 17, 2012. On August 8, 2012, counsel requested a conference pursuant to Supreme Court Rule 402 (eff. July 1, 2012). The trial court admonished defendant regarding its participation in the conference. The court informed defendant that the state's attorney would advise the court on the facts of the case, defendant's criminal background, and all evidence relevant in aggravation. Defendant's attorney would have the opportunity to inform the court about defendant's history, employment, education and "all the good things that you have done with your life." Defendant was further advised that at the end of the conference, the court would recommend an appropriate sentence which defendant

could accept or reject. The court asked defendant, "Do you understand all of that?" Defendant answered, "Yes." The conference was held off the record.

¶ 7    After the conference, the trial court stated on the record that defense counsel requested time to speak with defendant. The court continued the matter, by agreement, to September 18, 2012. On that date, defense counsel again requested time to confer with defendant and the matter was continued to October 16, 2012. The court told counsel, "I know we did have a 402 conference. I know you were discussing that with – with your client, so you can let me know on the 16th what your position is."

¶ 8    On October 16, 2012, defense counsel did not appear. The assistant state's attorney informed the court that counsel was no longer representing defendant. Defendant, who was present in court, acknowledged that he sent a letter to counsel indicating that he no longer wanted counsel to represent him. Defendant requested that a public defender represent him. Defendant stated that he last spoke with counsel on September 18, 2012. The court told defendant that his counsel needed to come to court and ask for leave to withdraw.

¶ 9    On November 18, 2012, defendant's counsel appeared in court and the trial court granted his request to withdraw. The court also appointed the public defender's office to represent defendant.

¶ 10    On December 6, 2012, assistant public defender Jonathan Kern appeared on behalf of defendant, who was present in court. Kern informed the trial court that he recently received discovery from the State and needed an opportunity to review the materials. The following exchange occurred between the parties:

"THE COURT: Where are we at with regard to discovery, State?

MS. PAPA: Once I recopy the portion of the discovery that I will now have to recopy for counsel, we are complete in our discovery. As you know, we had actually engaged in a conference in this case. I don't know.

MR. KERN: I would like the 17th to review discovery, launch an investigation, also get copies of the discovery. January 17.

MS. PAPA: That's fine, your Honor.

THE COURT: By agreement January 17."

¶ 11   The case was continued to January 29, 2013. At a hearing on that date, the parties informed the court that they had completed discovery. The court set a date of March 8, 2013, by agreement, "for [the] defense position." The cause was continued to March 10, 2013. On that date, Kern sought leave to file a motion for discovery as well as a motion to quash arrest and suppress evidence. Kern stated that in the discovery he received, he found no arrest report for defendant. On June 4, 2013, Kern informed the court that he received the arrest report. He also filed an answer.

¶ 12   On August 19, 2013, defendant's case was set for a hearing on his motion to quash arrest and suppress evidence. Kern, however, asked to withdraw the motion because after speaking with defendant, he decided, "as a matter of the trial strategy and our theory of the case, that we may in fact need the evidence that we are seeking to suppress in Mr. Birks' defense." The defense sought one more status date "before we set the case for trial."

¶ 13   On October 1, 2013, Kern requested a trial date of December 9, 2013. The court set November 5, 2013, by agreement, as the date to consider motions *in limine*. It also noted that December 9, 2013, would be the "jury date by agreement."

¶ 14   On November 5, 2013, the State informed the court that it had tendered additional discovery to defense counsel and after they discussed the matter, it hoped for a resolution. Defense

counsel replied that "[t]here may be a disposition. This was set on the trial call December. We are asking to move it from the trial call for status. We are in negotiations." Counsel asked the court to "not reset it for a trial date." The court stated that it would take the case "off the trial call *** based upon that and we will see where we are at with regard to December disposition. If not, we will reset it for trial on that date."

¶ 15    On December 9, 2013, with defendant present, the trial court inquired about the status of the case. Defense counsel replied that he spoke with the assistant state's attorney and "[w]e are looking to reset the matter for trial February 4th." The trial court set the matter for trial on February 4, 2014.

¶ 16    On February 4, 2014, the State answered that it was ready for trial. Defense counsel answered that the defense was ready as well, but he wanted time to confer with defendant "given the gravity and magnitude of the case." The trial court granted counsel's request.

¶ 17    When the case was recalled, defense counsel informed the court that after conferring with defendant and his family, they wanted to "re-open the 402 Conference." The trial court answered that the offer had been withdrawn. The court had made what it believed at the time was a reasonable recommendation, but defendant did not accept it. The court responded that it did not "have a practice of doing 402 conferences" on the day set for jury trial. It would consider conducting a 402 conference but warned that the sentence "could very well increase."

¶ 18    Defense counsel consulted with defendant and then stated that defendant "would like to take the Court's original offer *** tendered at the 402 Conference." Counsel told the court that he had a conversation with the assistant state's attorney about the offer, and it was his understanding that the offer remained valid. The assistant state's attorney disagreed, responding that "it was never my position that the court's offer was still there. When counsel asked *** about the offer I said I

*** wouldn't go any less than what you offered if he wanted to plead guilty prior to trial." She had left defense counsel a message stating that the case was set for trial on the following Monday and "if there was not an agreement for a plea that I was not going to be in a position to take that plea." Defense counsel reiterated his belief that the 10-year offer was never withdrawn.

¶ 19    The trial court responded that counsel's conduct indicated that the matter was going to trial. Counsel filed and withdrew motions, and both parties requested a trial date. The court told counsel that there was no indication during the one-and-a-half years between the 402 Conference and the date of trial that "the defense wanted to entertain any type of negotiations or re-convene the conference." The court stated that there was no indication that the offer was still available.

¶ 20    Although defense counsel understood the court's position, he was never informed that the offer was withdrawn. Counsel requested another 402 Conference to resolve the case prior to trial. The court stated that it "would entertain a blind plea," but it was "past the point" for a 402 Conference. After conferring with defendant and speaking with the assistant state's attorney, counsel informed the court that the State made an offer which defendant accepted. Defendant agreed to plead guilty to one count of aggravated criminal sexual assault in exchange for a sentence of 16 years in prison. The trial court admonished defendant of the consequences of his plea, and he answered that he understood.

¶ 21    The court asked if defendant had been threatened or promised "anything other than the recommendation that is being made to the court." Defendant answered, "I've been promised." When the court asked what he had been promised, defendant answered, "[t]en years." Defense counsel explained that defendant was referring to the offer made at the earlier 402 Conference. The trial court reiterated that the offer had been withdrawn and the parties had been moving

forward to trial posture for more than one-and-a-half years. The parties stipulated the facts underlying defendant's guilty plea, which the trial court found sufficient to support the plea.

¶ 22    Defendant then addressed the court, stating:

"In the beginning of this case I had Salim Sheikh as an attorney. He had in his possession two affidavits. And, he told me that if he went into a 402 with you and State's Attorney he could get those charges thrown out. *** I refused to let him do it but he was a paid attorney. Under the way he explained to me and the way he presented himself as a professional I let him do it.

When he came out of the 402 he said the State offered 15 you went down to ten. The reason I didn't go for the ten is because he gave me his word he could do it. That's why I proceeded to move forward. But, Salim Sheikh [was] fired. I fired him because *** I didn't really know who he was.

And, when I did research on him I had my family do research nobody could find out *** where he was located. *** So, my point is I fired him. So, when I got John Kern to represent me I never knew the ten was off the table. I'm not saying that it's your job to tell me but if I had [known] what the circumstances [were] I would [have] never [come] this far or I would [have] had an option. My option was [taken] off because the 402 was taken from me."

¶ 23    The trial court responded that the option was not taken from defendant. Rather, defendant indicated that he wanted to go to trial "since August of 2012, [and] that's where we've been going." The court reminded defendant several times that he did not have to plead guilty, and he had the option to plead not guilty and have a jury trial. Defendant stated that he wanted to continue with his guilty plea.

¶ 24    The court accepted the recommended sentence of 16 years' imprisonment, served at 85 percent. The court also advised defendant that he had a right to appeal within 30 days, but before doing so he must file a motion to withdraw his guilty plea and vacate the judgment.

¶ 25    On August 25, 2016, defendant mailed a motion to proceed as a poor person and a motion for transcripts. Defendant filed the motions again on December 12, 2016. On January 6, 2017, the circuit court denied the motions because there were no matters pending before the court.

¶ 26    On June 6, 2019, defendant filed a *pro se* petition for postconviction relief. Therein, he alleged that his plea was not knowing or voluntary because the trial court interfered with the plea proceedings. He further alleged that the court failed to conduct a *Krankel* hearing and improperly allowed the State to discuss plea negotiations on the record. Defendant was "intimidated by the trial judge into pleading guilty due to the trial judge's continuous references to a jury trial." In his attached affidavit, defendant stated that had his counsel informed him that the original plea offer "would be withdrawn if not [accepted] sooner," he would have accepted the original offer.

¶ 27    The circuit court appointed postconviction counsel to represent defendant. Counsel filed a supplemental petition asserting that the trial court had violated defendant's due process rights by not allowing him to accept the original 10-year plea offer, and alternatively, that Kern provided ineffective assistance when he allowed the offer to expire. Counsel also filed a signed certificate pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). The certificate stated that postconviction counsel 1) consulted with defendant "by phone, mail, electronic means or in person to ascertain his or her contentions of deprivation of constitutional rights," 2) "examined the record of proceedings at the guilty plea, including the common law record, report of proceedings and any exhibits in possession of the Clerk of the Circuit Court," and 3) "made amendments to the petition filed pro se, [that] are necessary for an adequate presentation" of defendant's contentions.

¶ 28 The State informed the circuit court that it believed defendant's postconviction counsel filed his 651(c) certificate "way too early." It was also aware that counsel had filed a supplemental petition. The State asked for a date for both parties to appear regarding the certificate. The State acknowledged that given what postconviction counsel had filed thus far, it was not in a position to file a motion to dismiss.

¶ 29 At a subsequent hearing on January 7, 2022, postconviction counsel stated that he had received all of the transcripts in the case. He further stated that he would not be amending the supplemental petition or his 651(c) certificate. The State thereafter filed a motion to dismiss defendant's petition. It argued that the petition was untimely, and all claims were forfeited except defendant's ineffective assistance claim that Kern improperly allowed the 10-year offer to expire.

¶ 30 Defendant responded that the delay in filing his petition was not due to his culpable negligence. Postconviction counsel obtained an additional affidavit from defendant in which he stated that "the untimeliness of [his] post-conviction petition was due to the fact that [he was] not a lawyer and [had] not been educated in the complexities of the law." Defendant further stated that he requested a copy of his transcript on August 25th and December 2nd of 2016, but his request was denied. His sister attempted to obtain the transcripts, but she could not afford to pay for them. Defendant stated that he was able to purchase three transcripts "[a]fter some time," and upon receiving them, he "researched" his petition. He averred that "[w]ithout transcripts, it was impossible to draft and submit a *pro se* post-conviction petition."

¶ 31 The circuit court granted the State's motion to dismiss. It found that defendant's petition and supplemental petition failed to state a reason why he should not be held culpably negligent. Thus, defendant's petition was not timely filed, and dismissal was proper on this basis. The court also determined that defendant's claims that his plea was not knowingly or voluntarily made, that

the trial judge interfered with the plea process, and that he should have been allowed to accept the 10-year plea offer, were forfeited because they could have been raised in a post-sentencing motion or on appeal. Moreover, these claims were rebutted by the record.

¶ 32    Regarding defendant's ineffective assistance of counsel claim, the circuit court found that it could have been raised in a post-sentencing motion or on appeal and thus was forfeited. On the merits, the record showed that defendant was advised of the 10-year offer by his first counsel, but he refused it. The court believed that when Kern became defendant's counsel, the offer "was no longer in existence." Kern's attempt to resurrect the 10-year offer "was admirable work" and not indicative of deficient performance. The court also found that defendant could not show prejudice because nothing in the record indicated that Kern could have resurrected "a dead offer."

¶ 33    Defendant filed this appeal.

¶ 34                                  III. ANALYSIS

¶ 35    Upon the State's motion, the circuit court dismissed defendant's petition as untimely at the second stage without an evidentiary hearing. The Post-Conviction Hearing Act (Act) provides that "[i]f a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence." 725 ILCS 5/122.1(c) (West 2020). This time limit is an affirmative defense that the State can raise, waive, or forfeit. *People v. Boclair*, 202 Ill. 2d 89, 101 (2002). If the State chooses to raise the defense, it may file a motion to dismiss the petition at the second stage of postconviction proceedings, after defendant's counsel has made any necessary amendments addressing the timeliness issue. *People v. Perkins*, 229 Ill. 2d 34, 43 (2007).

¶ 36    When reviewing a petition's dismissal at the second stage, we take as true all factual allegations not positively rebutted by the record. *People v. Lander*, 215 Ill. 2d 577, 586 (2005).

We will reverse a circuit court's findings of fact regarding timeliness only if they are manifestly erroneous, but we review *de novo* the court's ultimate determination to dismiss defendant's petition as untimely filed. *People v. Ramirez*, 361 Ill.App.3d 450, 452 (2005).

¶ 37 Defendant pleaded guilty to one count of aggravated criminal sexual assault on February 4, 2014, and the trial court sentenced him to a term of 16 years pursuant to the parties' plea agreement. Defendant did not file a motion to withdraw his plea, nor did he file a direct appeal. As a result, he had three years from his conviction, or until February 4, 2017, to file a postconviction petition. See 725 ILCS 5/122.1 (c) (West 2000). Defendant filed his petition on June 25, 2019, well past the three-year limitation period. Consequently, to avoid dismissal of his petition, defendant must allege facts showing he lacked culpable negligence in filing his petition. *Perkins*, 229 Ill. 2d at 43.

¶ 38 The supreme court has defined culpable negligence, in the context of section 122.1, as greater than ordinary negligence and akin to recklessness. *Boclair*, 202 Ill.2d at 108. For example, culpable negligence may be shown by a petitioner's indifference to, or conscious disregard of, the consequences of his or her action or inaction. *People v. Rissley*, 206 Ill. 2d 403, 419 (2003). In his petition and supplemental petition, defendant claimed that he was not culpably negligent where 1) he was not a lawyer and did not recognize his legal claims, 2) the trial court intimidated him into accepting a guilty plea he was reluctant to take, and thus he was afraid to file legal documents regarding his plea until he understood he could ask for a different judge to hear his petition, and 3) he had difficulty obtaining the transcripts necessary to draft and submit his petition.

¶ 39 Regarding defendant's first claim, "[i]t is well settled that all citizens are charged with knowledge of the law," and ignorance of one's legal rights is not an excuse for a delay in filing the

petition. *People v. Lander*, 215 Ill. 2d 577, 588 (2005). It is defendant's sole responsibility to know the time requirements for filing a postconviction petition. *Id.* at 588-89.

¶ 40 Moreover, the record positively rebuts defendant's second claim. The trial court asked defendant multiple times whether he wanted to plead guilty and informed him that he need not do so. Defendant accepted the offer of 16 years' imprisonment because he believed the "402 [option] was taken from [him.]" Although defendant admitted that he had rejected the court's 10-year recommendation, he did not know the option would expire. He acknowledged that it was not the court's "job" to inform him.

¶ 41 As shown by defendant's statements in the record, he may have been reluctant to accept the 16-year offer, but his disclination stemmed from his desire to accept the prior 10-year recommendation, not from the trial court's conduct. Defendant decided to accept the State's 16-year offer, rather than go to trial, when he realized the 10-year recommendation was no longer available. Nothing in the record indicates that the trial court forced defendant to accept the 16-year offer. We need not take as true allegations in a petition that are positively rebutted by the record of the original trial proceedings. *People v. Sanders*, 2016 IL 118123, ¶ 48.

¶ 42 As for defendant's claim that the filing delay was due, in part, to his inability to obtain transcripts, he cites *People v. Upshaw*, 2017 IL App (1st) 151405 and *People v. Bumpers*, 379 Ill. App. 3d 611 (2008), as support.

¶ 43 In *Upshaw*, the defendant alleged that he did not have access to the prison law library for 179 days between the time the supreme court denied his leave to appeal and the date he filed his petition, because the facility was on general lockdown. In addition, prison staff lost his trial transcripts and legal materials. These circumstances occurred through no fault of the defendant. *Upshaw*, 2017 IL App (1st) 151405, ¶¶ 25-26. He also attached affidavits from law library staff

corroborating his claims that his records were lost. *Id*. ¶ 26. Despite these setbacks, the defendant began working on his petition before the due date, and he filed it only about eight months after the deadline. *Id*. ¶¶ 26, 30. Considering the circumstances alleged by the defendant, "that he had limited access to the law library, he began to work on his petition within days of the denial of his PLA, he was unable to retrieve his lost trial records, and his petition was only eight months late," we found that he had made a substantial showing that he was not culpably negligent. *Id*. ¶ 31.

¶ 44    *Upshaw*, however, is distinguishable. The petition in *Upshaw* provided a timeline showing the defendant's diligence in filing his petition, and his factual allegations were corroborated by affidavits. Moreover, given the setbacks experienced by the defendant, he continued to work on his petition and filed it only eight months after the due date.

¶ 45    In contrast, defendant waited over two and a half years following his guilty plea in 2014 to request his trial transcripts. Thereafter, he represents that he began researching his petition. He, however, did not specify when he received the transcripts. From defendant's affidavits, we only know that he first requested transcripts in 2016, he obtained his transcripts at some point, and he filed his petition in June 2019. Without knowing when defendant received the transcripts within that three-year period, it is impossible to ascertain his diligence in filing his petition.

¶ 46    The other case cited by defendant, *Bumpers*, was vacated via supervisory order of the supreme court. See *People v. Bumpers*, 229 Ill. 2d 632 (2008). Nonetheless, we also find *Bumpers* distinguishable. Upon learning about a possible constitutional error in his sentencing, the defendant "immediately took action to obtain his transcripts." *Bumpers*, 379 Ill. App. 3d at 617. Although he had difficulty obtaining them, once he received the transcripts he prepared and mailed his petition within three months. *Id*. The defendant in *Bumpers* required the transcripts to determine whether he had a postconviction claim. *Id*. at 616.

¶ 47    In contrast, defendant here did not need transcripts of the proceedings to ascertain whether he had a claim. He knew of his claims regarding the 10-year sentence recommendation when he pleaded guilty. Defendant told the trial court at the time that he believed the 10-year option "was taken from" him. Furthermore, unlike the defendant in *Bumpers*, defendant did not specify how long it took for him to file his petition after receiving his transcripts. Whether the delay in filing a petition is due to defendant's culpable negligence depends not only on when he discovers the claim, but also on how promptly he acts after the discovery. See *People v. Davis*, 351 Ill.App.3d 215, 218 (2004) (finding culpable negligence where a defendant discovered his postconviction claim nine months after his conviction, but then waited an additional two years to file his petition).

¶ 48    Defendant's position on this issue, in essence, was that "[w]ithout transcripts, it was impossible to draft and submit a *pro se* post-conviction petition." As such, we find *People v. Diefenbaugh*, 40 Ill. 2d 73 (1968) applicable here. In *Diefenbaugh*, the defendant pleaded guilty and filed his postconviction petition eight-and-a-half years later. *Id.* at 73. He argued that his petition was delayed because the trial court failed to respond to his repeated requests for a transcript of the proceedings. *Id.* at 74. The court held that "a mere allegation that he was unable to obtain a *** transcript does not establish his freedom from culpable negligence in failing to file his petition within the required time designated by statute." *Id*. at 75.

¶ 49    We find, as did the supreme court in *Diefenbaugh*, that defendant's mere allegation that he was unable to obtain his transcripts did not establish his lack of culpable negligence. Therefore, the circuit court properly dismissed defendant's untimely filed petition.

¶ 50    We next consider whether postconviction counsel complied with Rule 651(c) in light of defendant's untimely-filed petition. Rule 651(c) imposes certain duties on postconviction counsel to ensure that a defendant receives reasonable legal assistance under the Act. *Perkins*, 229 Ill. 2d

at 42. The rule requires counsel to 1) consult with defendant by mail or in person to ascertain the existence of any constitutional claims, 2) examine the record of the trial proceedings, and 3) amend defendant's *pro se* petition as necessary to adequately present defendant's contentions. *Id.* The filing of a Rule 651(c) certificate raises a rebuttable presumption that postconviction counsel provided reasonable assistance during second-stage proceedings under the Act. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19.

¶ 51    To comply with Rule 651(c) regarding an untimely *pro se* petition, counsel may either obtain the State's waiver of the untimeliness defense or allege defendant's lack of culpable negligence in the late filing. *Perkins*, 229 Ill. 2d at 43. If no waiver is obtained from the State, Rule 651(c) requires counsel to amend defendant's petition "to allege any available facts necessary to establish that the delay was not due to the petitioner's culpable negligence." *Id.* at 50. Counsel must also allege any reason for the delay apparent from the pleadings and record. *Id.*

¶ 52    Here, the State clearly did not waive the defense as it filed a motion to dismiss defendant's petition and alleged untimeliness as a basis for dismissal. In response to the State's motion, counsel obtained an additional affidavit from defendant asserting that the petition was untimely filed because defendant was not a lawyer, and that defendant requested copies of his transcript in 2016, before his petition was due, but had difficulty obtaining them. He further asserted that he began researching his claims after he had saved money to purchase the transcripts.

¶ 53    Here, postconviction counsel filed a Rule 651(c) certificate, thus raising the presumption that he provided reasonable assistance. Moreover, nothing in the record rebuts this presumption. Although counsel did not amend defendant's petition or the supplemental petition in response to the State's motion to dismiss, he did present additional facts alleging defendant's lack of culpable negligence through defendant's second affidavit. We may not have found these facts compelling,

nor the arguments based on them meritorious, but they may have represented the best option available to counsel. See *Perkins*, 229 Ill. 2d at 51. There are no facts in the record indicating that defendant had other reasons for the delay in filing his petition, which counsel failed to present. As such, we give effect to counsel's representation in his certificate that he complied with Rule 651(c) and find that he fulfilled his obligations under the rule.

¶ 54    Since we have determined that defendant's postconviction petition was untimely, and defendant did not establish his lack of culpable negligence in the late filing, we need not address the substance of his claims in the petition or his contention that postconviction counsel failed to comply with Rule 651(c) when he failed to amend the petition to assert a claim of ineffective assistance of trial counsel. See *id*. at 41 (finding that "[u]nder the Act, a petitioner's claims cannot be presented if they are untimely and the petitioner has not alleged facts showing the delay in filing was not due to his culpable negligence").

¶ 55                              IV. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 57    Affirmed.