NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241296-U

NO. 4-24-1296

IN THE APPELLATE COURT

FILED
May 8, 2025
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Stephenson County |
| TWIQWON R. FANE, | ) | No. 16CF283 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Glenn R. Schorsch, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed an order granting the State's motion to dismiss
defendant's amended postconviction petition where defendant made a substantial
showing of ineffective assistance of counsel during plea negotiations.

¶ 2    Defendant, Twiqwon R. Fane, appeals an order dismissing his amended
postconviction petition at the second stage of proceedings. We reverse and remand for a third-stage
evidentiary hearing on defendant's claim.

¶ 3                          I. BACKGROUND

¶ 4    On November 18, 2016, the State charged defendant by complaint with six
offenses. Each charge arose out of entering a residence without authority and battering the elderly
homeowner, Voncile Modlinger. Relevant to this appeal, count I alleged defendant committed the
offense of home invasion (720 ILCS 5/19-6(a)(2) (West 2016)) in that he entered Modlinger's
dwelling, knowing her to be present therein.

¶ 5        On November 21, 2016, the matter came before Judge James Hauser for an initial appearance. The trial court admonished defendant as follows about the potential prison sentence he faced on the home invasion count:

> "The home invasion charge is a Class X felony. As such[,] on that one, you could be sentenced to the Illinois Department of Corrections [(DOC)] for a minimum term of six and a maximum term of 30 years. If your prior record is bad enough, the DOC sentence could be extended to a maximum term of 60 years."

¶ 6        On December 1, 2016, the State charged defendant by superseding information with seven offenses. Count I was substantially similar to the first count of the original complaint. Count II added a second charge of home invasion on a slightly different theory, that defendant entered and remained in Modlinger's dwelling until he knew or had reason to know she was present therein.

¶ 7        On December 1, 2016, the matter came before Judge Michael Bald for a preliminary hearing. Before conducting that hearing, the trial court admonished defendant as follows about the potential prison sentence he faced on the home invasion counts:

> "If you're convicted of those, there would be a term in [DOC] that's ordinarily a set term somewhere between 6 and 30 years in length. However, if by reason of your prior criminal history you were eligible for an extended term, then it could go as high as 60 years."

After hearing evidence and determining there was probable cause, the court again admonished defendant about the potential prison sentence he faced on the home invasion counts:

> "Home invasion is a Class X felony. If you either plead guilty or are found guilty at trial of these charges, the potential penalties would be a term in [DOC]

somewhere between 6 and 30 years ordinarily. However, if you were eligible for an extended term, the maximum on that could go as high as 60 years."

Later during this same court appearance, the court asked whether the parties had any motions. The prosecutor indicated he filed three motions and "a notice of seeking enhanced sentencing in this case for the home invasion charges." Defense counsel acknowledged that "[w]e've received the motions that the State has referred to" and asked for the court to defer ruling on two of those motions until he could discuss them with defendant. There was no further discussion in court that day about the State seeking an "enhanced" sentence.

¶ 8        The record contains the State's "Notice of Intent to Seek an Enhanced Sentence," which was filed on December 1, 2016. The notice misidentified the relevant statute and subsection by citing the nonexistent "730 ILCS 5/5-3.2(b)(3)(iii)" instead of 730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2016). The notice also imprecisely referenced an "enhancement," as it would have been more accurate to say that the State was seeking an extended-term sentence. See 725 ILCS 5/111-3(c) (West 2016) (defining " 'enhanced sentence' " as "a sentence which is increased by a prior conviction from one classification of offense to another higher level classification," as opposed to "an increase in the sentence applied within the same level of classification of offense," which is what the State sought here). Nevertheless, the notice used the phrase "extended term" once, and it would have been apparent from the context—to a trained lawyer, at least—that the State was seeking an extended-term sentence on the two home invasion charges because the victim was 60 years of age or older at the time of the offenses. The notice did not specify defendant's sentencing range, and there is no indication in the record that defendant personally received a copy of this notice.

¶ 9        Defendant was never again admonished on the record about either the sentencing

consequences of his charges or the fact that the State intended to seek an extended-term sentence.

¶ 10    In October 2017, Judge Val Gunnarsson presided over defendant's jury trial. Relevant to this appeal, the jury found defendant not guilty of home invasion as charged in count I but guilty of home invasion as charged in count II. The jury also found the State proved its allegation that Modlinger was 60 years of age or older at the time of the offense.

¶ 11    On November 3, 2017, defendant's counsel filed a posttrial motion on defendant's behalf. On November 17, 2017, defendant filed a *pro se* motion, alleging ineffective assistance of counsel in multiple respects. Relevant here, defendant alleged:

"1. My attorney failed to inform me of the Notice of Intent to seek an Enhanced sentence. The notice was given to him on a day being 12-01-2016, however I was not informed about the Notice until after trial, on 11-03-2017. If I would have been made aware of this Notice it is possible I would have entered into a plea agreement & not proceeded to trial. The knowledge of this Notice being withheld by my attorney adversely affected my decision."

¶ 12    On December 1, 2017, Judge Gunnarsson conducted an inquiry into defendant's allegations of ineffective assistance of counsel consistent with the standards articulated in *People v. Krankel*, 102 Ill. 2d 181 (1984). Relevant here, defendant's counsel told the trial court that he and defendant had good communication "throughout this time." Counsel added the following, which was pertinent to the issue of an extended-term sentence:

"I did have communication with [defendant] both before and during the trial.

He's particularly complaining about the fact that I didn't communicate to him *** the State's intention to seek an enhanced sentence in this case.

And I can tell the Court that *** after the trial was over and we were

discussing the sentencing, he asked me what he was looking at. I told him the sentencing range, and he seemed genuinely surprised by that and indicated to me that that was the first he had heard of that.

That is not my recollection and that is—"

The court cut counsel off, saying it did not "want to pry any further into your particular discussions." The court declined to appoint new counsel for defendant. The court reasoned that because defendant had not been sentenced, it could not yet evaluate defendant's claim about his lack of knowledge of the possibility of an extended-term sentence.

¶ 13    On December 14, 2017, Judge Gunnarsson denied the posttrial motion that had been filed by defendant's counsel and proceeded to a sentencing hearing. In his statement in allocution, defendant maintained his innocence. The trial court sentenced defendant to an extended-term sentence of 40 years in prison for home invasion. The court ordered that the much shorter sentences on other charges would run concurrently with the sentence for home invasion.

¶ 14    On January 12, 2018, defendant's counsel filed a motion on defendant's behalf, arguing that the 40-year sentence for home invasion was excessive. On February 26, 2018, Judge Gunnarsson held a hearing on that motion. Defense counsel argued:

"The first mention of an extended term sentence of this Court was actually on December 1st of 2017. In the context of my client's *Krankel* complaints, one of them was an allegation he hadn't been informed of an extended term sentence. And the Court's response was, well, if an extended term sentence is not imposed, then that doesn't matter; in other words, there would be no prejudicial impact. In light of the extended term sentence being imposed, we believe that that issue should be revisited, or our preference today is that a sentence in the non-extended term range

be substituted."

The trial court determined that it had not taken sufficient account of defendant's rehabilitative potential at the original sentencing hearing. Thus, the court reduced defendant's prison sentence for home invasion to a nonextended term of 30 years.

¶ 15    Due to proceedings in the supreme court and a remand to the appellate court, defendant's direct appeal took more than four years to resolve. Ultimately, the appellate court affirmed defendant's convictions. *People v. Fane*, 2022 IL App (2d) 180151-U, ¶ 47. Defendant did not raise any issue about events occurring during plea negotiations.

¶ 16    Meanwhile, in May 2019, defendant filed a *pro se* postconviction petition alleging as follows. His trial counsel was ineffective during plea negotiations "a few weeks before trial." The State offered for defendant to plead guilty to home invasion in exchange for a 10-year prison sentence and the dismissal of other charges. Defendant asked his counsel how much prison time he faced if he were convicted following a trial. Counsel responded that if defendant were convicted at trial, "he could not receive an extended term sentence, nor would he be sentenced to more than ten (10) years in prison." Defendant rejected the State's offer. Had he known the State would seek an extended-term sentence and that he was subject to more than 10 years in prison if convicted at trial, "he likely would have accepted the State's fully negotiated plea offer and pleaded guilty rather than go to trial and face a much longer possible sentence."

¶ 17    Along with his petition, defendant submitted his own affidavit. He attested that he would have accepted the State's plea offer but for his counsel's erroneous advice that he (1) "could not be sentenced to more than 10 years in prison" if he went to trial and (2) "could not receive an extended term sentence."

¶ 18    Judge Gunnarsson advanced defendant's petition to the second stage of proceedings

before retiring from the bench.

¶ 19      In June 2024, defendant's court-appointed postconviction counsel filed an amended petition on defendant's behalf. The amended petition adopted and incorporated the original *pro se* petition before alleging the following additional relevant facts. Defendant's codefendant, Drean McGee, pleaded guilty in connection with breaking into Modlinger's home and received a 10-year prison sentence. The State likewise offered defendant a plea deal that would entail 10 years in prison. That offer "remained open at all times prior to trial" and "for some time after the trial proceedings had begun." Nothing in the record indicated that Judge Gunnarsson would have declined to accept the plea had defendant pleaded guilty. At no time before the jury found defendant guilty did his counsel "adequately discuss the possibility of an enhanced sentence in this matter."

¶ 20      Defendant's amended postconviction petition also provided additional argument. Defendant clarified that his "chief complaint is that he was unaware that he was eligible for an extended term sentence and, more specifically, that [trial counsel] never discussed the possibility of an extended term sentence with him during the plea-bargaining phase of this case." Defendant's second complaint was that his "trial counsel told him he would not get more than ten (10) years if he took the matter to trial." Defendant contended that certain comments that his trial counsel made in open court during posttrial proceedings (see *supra* ¶¶ 12, 14) indicated that defendant was unaware of the possibility of an extended-term sentence. According to defendant, had his counsel "informed him of the possibility of an extended term sentence, there was a reasonable probability he would have accepted the State's plea deal."

¶ 21      The State moved to dismiss defendant's amended postconviction petition on the bases that defendant's claim (1) was waived because it could have been raised on direct appeal

and (2) was contradicted by the record. On the second point, the State emphasized that defendant was admonished three times before trial about the applicable sentencing ranges and was present in court when the State provided notice that it intended to seek an enhanced sentence.

¶ 22 On September 25, 2024, Judge Glenn Schorsch granted the State's motion to dismiss defendant's amended postconviction petition. The trial court reasoned that defendant "was fully admonished at least three times" about the applicable sentencing ranges and was present in court when the State provided notice that it was "seeking an extended period" of incarceration. The court added that because defendant maintained his innocence in his motion to reconsider his sentence, it was "highly unlikely that a plea for 10 years would have been accepted, though anything is possible." The court did not address the State's waiver argument.

¶ 23 Defendant filed a timely notice of appeal.

¶ 24 II. ANALYSIS

¶ 25 On appeal, defendant contends that the trial court improperly granted the State's motion to dismiss his amended postconviction petition as he made a substantial showing of a constitutional violation during plea negotiations. He also argues that his claim is not barred by waiver. In the event we deem the claim waived, defendant argues that his postconviction counsel provided unreasonable assistance by failing to allege ineffective assistance of appellate counsel in the amended petition.

¶ 26 The State reiterates its argument that defendant's postconviction claim is positively rebutted by the record. The State expressly declines to renew its waiver argument.

¶ 27 A. The Post-Conviction Hearing Act

¶ 28 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) "provides a means for individuals serving criminal sentences to assert that their convictions

resulted from substantial denials of their constitutional rights." *People v. Hilliard*, 2023 IL 128186, ¶ 18. There are three stages of postconviction proceedings. At the first stage, the court reviews the petition independently to determine whether it is " 'frivolous or is patently without merit.' " *Hilliard*, 2023 IL 128186, ¶ 19 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2018)). If the court does not summarily dismiss the petition pursuant to this standard, the matter proceeds to the second stage. *Hilliard*, 2023 IL 128186, ¶ 19. At that point, the court may appoint counsel for the defendant, and the State may answer the petition or move to dismiss it. *People v. Domagala*, 2013 IL 113688, ¶ 33. If the defendant's petition and any accompanying documentation make a substantial showing of a constitutional violation, the matter proceeds to a third-stage evidentiary hearing. *Domagala*, 2013 IL 113688, ¶¶ 33-34. At that evidentiary hearing, the trial court "serves as the fact finder" by assessing witness credibility, weighing testimony, resolving evidentiary conflicts, and ultimately determining whether the defendant is entitled to postconviction relief. *Domagala*, 2013 IL 113688, ¶ 34.

¶ 29        The present appeal involves the second stage of postconviction proceedings. The sole focus at this point is "the legal sufficiency of the petition." *Domagala*, 2013 IL 113688, ¶ 35. Accordingly, in evaluating whether a defendant made a substantial showing of a constitutional violation at the second stage, the trial court may not make factual findings or determine credibility. *Domagala*, 2013 IL 113688, ¶ 35. Rather, the court must accept as true all well-pleaded facts in the petition that are not "affirmatively refuted by the record." *Domagala*, 2013 IL 113688, ¶ 35. The question is whether the defendant's well-pleaded allegations, if proven at an evidentiary hearing, would justify granting postconviction relief. *Domagala*, 2013 IL 113688, ¶ 35. We review *de novo* an order dismissing a petition at the second stage. *People v. Huff*, 2024 IL 128492, ¶ 13.

¶ 30                      B. Claims of Ineffective Assistance of Counsel in

Connection With Plea Negotiations

¶ 31          Criminal defendants possess constitutional rights to decide what plea to enter and "to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State." *People v. Williams*, 2016 IL App (4th) 140502, ¶ 33. To safeguard those rights, defendants are entitled to effective assistance of counsel during plea negotiations. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). Claims of ineffective assistance related to the plea-bargaining process are subject to the two-part test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Hale*, 2013 IL 113140, ¶ 15. *Strickland* requires defendants to show both that their counsel performed deficiently and that such deficiency prejudiced the defense. *Strickland*, 466 U.S. at 687.

¶ 32          Here, defendant rejected a plea offer, was convicted at trial, and received a much harsher penalty than he would have had he accepted the offer. He now claims his counsel caused this unfortunate situation by providing inaccurate information during plea negotiations. Courts have addressed how *Strickland* applies to claims of this nature. For purposes of *Strickland*'s first prong, courts recognize that "a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged." *People v. Curry*, 178 Ill. 2d 509, 528 (1997), *abrogated in part on other grounds*, *Hale* 2013 IL 113140, ¶ 20. If counsel provided deficient representation, demonstrating prejudice for purposes of *Strickland* requires a defendant to show that "(1) a reasonable probability existed that the defendant would have accepted the guilty-plea offer absent counsel's deficient performance and (2) the guilty-plea offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties' agreement." *Williams*, 2016 IL

App (4th) 140502, ¶ 29.

¶ 33                    C. Postconviction Petitions Alleging Ineffective

                Assistance in Connection With a Forgone Plea Offer

¶ 34        As mentioned above, during the first two stages of postconviction proceedings, courts are prohibited from making credibility determinations or factual findings and must accept as true all well-pleaded facts that are not affirmatively refuted by the record. Plea negotiations, by their very nature, occur off the record. Unless courts go out of their way to create a record before trial, there likely will be nothing in the record to affirmatively refute a defendant's postconviction allegations about what defense counsel said or did not say during plea negotiations. The result is that postconviction claims of the type defendant raises here may often require third-stage evidentiary hearings, perhaps long after the original trial. Such hearings require attorney preparation and judicial resources. It could also be seen as unfair to a defendant if it ultimately takes years to remedy a constitutional violation that could have been identified and avoided before trial.

¶ 35        The Fourth District recognized this reality in *Williams*, 2016 IL App (4th) 140502, ¶ 36. We encouraged trial courts to employ what we called a " 'preflight checklist' " designed to make a record before trial confirming that criminal defendants who reject plea offers understand their sentencing exposure. *Williams*, 2016 IL App (4th) 140502, ¶ 36. Although we will not repeat the checklist here, we reiterate that pretrial inquiries of this nature are advisable.

¶ 36                          D. Defendant's Claim

¶ 37        Defendant claimed in his amended postconviction petition that his trial counsel was ineffective during plea negotiations. Specifically, defendant alleged that (1) he was unaware he was eligible for an extended-term sentence because his counsel never discussed that possibility

with him during plea negotiations and (2) his counsel told him he could not or would not be sentenced to more than 10 years in prison if he went to trial. We hold that defendant made a substantial showing of a constitutional violation, warranting an evidentiary hearing.

¶ 38    The record shows that defendant received admonishments about his sentencing range at his first two court appearances on November 21 and December 1, 2016. Specifically, defendant received accurate information that the ordinary sentencing range for home invasion was 6 to 30 years in prison. He also learned that he could be subject to up to 60 years in prison if his criminal record made him eligible for extended-term sentencing.

¶ 39    Toward the end of the proceedings on December 1, 2016, the prosecutor commented that the State had filed "a notice of seeking enhanced sentencing in this case for the home invasion charges." However, the prosecutor did not specify on the record the reason for this enhancement, nor is "enhance" the word used in the relevant statute. See 730 ILCS 5/5-5-3.2(b)(3)(ii) (West 2016) (providing that committing a felony against a victim over the age of 60 may be considered as a reason to impose an "extended term sentence"). Additionally, nobody expressly informed defendant on the record that (1) this enhancement related back to the previous admonishments about extended-term sentences or (2) the State was seeking to imprison him for up to 60 years. There is also no indication that defendant personally saw the notice the State filed regarding the enhancement. Even if defendant saw the notice at some point, it (1) contained a scrivener's error in citing the statutory basis for defendant's enhancement and (2) did not identify defendant's sentencing range.

¶ 40    As the matter returned to court over the next 10 months, the parties did not discuss sentencing in open court. Shortly before trial started in October 2017, the State allegedly made defendant an offer to plead guilty to home invasion in exchange for a 10-year prison sentence and

the dismissal of other charges. Although defendant acknowledges he was aware of this offer, he alleges his counsel told him during plea negotiations that he either could not or would not be sentenced to more than 10 years in prison if he proceeded to trial and was convicted. If this is true, defense counsel may have performed deficiently by misadvising defendant about the sentencing exposure attendant to rejecting the plea offer. See *Williams*, 2016 IL App (4th) 140502, ¶ 33 (recognizing that a criminal defendant has a "constitutional right to be reasonably informed with respect to the direct consequences of accepting or rejecting a guilty-plea offer from the State").

¶ 41        On appeal, the State essentially argues that defendant should have connected the dots on his own, based on what he heard during his first two court appearances, to ascertain that the prosecution was seeking an extended-term sentence of up to 60 years in prison and that he was passing up a great deal by rejecting the State's 10-year offer. However, nothing contradicts defendant's representations about what his counsel told him and did not tell him off the record, so we must assume the truth of defendant's allegations. See *Domagala*, 2013 IL 113688, ¶ 35 (explaining that at the second stage of postconviction proceedings, a court must accept as true the allegations that are not "affirmatively refuted by the record"). There is no indication that the trial court here went through the "preflight checklist" recommended by *Williams*, which would have made a record before trial as to whether defendant had an accurate understanding of his sentencing exposure attendant to rejecting the State's plea offer.

¶ 42        Defendant maintains that his counsel affirmatively misrepresented his sentencing exposure during plea negotiations in late 2017—10 months after the trial court had last discussed possible sentencing ranges and 10 months after the prosecutor mentioned an enhancement. Defense counsel purportedly led defendant to believe that there was no risk attendant to rejecting the State's offer and proceeding to trial; either defendant would be acquitted and face no prison

time, or he would be convicted and receive no more prison time than what the State was offering. At this point in the postconviction proceedings, we are prohibited from concluding that defendant (1) is mistaken about or misrepresenting what his counsel told him during plea negotiations or (2) should have recognized, based on previous admonishments, that his counsel was giving him inaccurate advice during plea negotiations about his sentencing exposure. See *Domagala*, 2013 IL 113688, ¶ 35 (prohibiting courts from making credibility determinations or engaging in fact finding at the second stage).

¶ 43    Defendant rejected the 10-year plea offer, was convicted by a jury, and was ultimately sentenced to 30 years in prison, which was the maximum nonextended-term sentence. Those circumstances provide at least some support for a showing of prejudice in connection with an ineffective-assistance claim. See *Lafler*, 566 U.S. at 166 ("Even if the trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence."); *Hale*, 2013 IL 113140, ¶ 18 ("The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice.").

¶ 44    Demonstrating prejudice also requires defendant to make a substantial showing that "(1) a reasonable probability existed that [he] would have accepted the guilty-plea offer absent counsel's deficient performance and (2) the guilty-plea offer would have been entered without the prosecution rescinding the offer or the court's refusing to accept the parties' agreement." *Williams*, 2016 IL App (4th) 140502, ¶ 29. Defendant has met this burden for purposes of the second stage of postconviction proceedings.

¶ 45    The State mentions that defendant interjected, "[w]hat a lie," when the trial court

read him the allegations of one of his aggravated battery charges at the first court appearance on November 21, 2016. The State also notes that defendant maintained his innocence during his statement in allocution at his sentencing hearing. From these facts, the State deduces that defendant "may" have been inclined to reject any plea offer, no matter how favorable to him, and that "the record at least arguably rebuts defendant's claim that he would have pleaded guilty." This line of reasoning is misguided, as we cannot make factual findings about what defendant "may" have been inclined to do, nor can we reject defendant's claim on the basis that it is "arguably" rebutted by the record.

¶ 46    Furthermore, there is no basis in the record to conclude that the State would have revoked the 10-year plea offer. To the contrary, defendant alleged the offer remained open through at least a portion of the trial. There is likewise no basis in the record to conclude that the trial court would have refused to approve a 10-year plea deal had the parties reached such an accord. The State does not argue otherwise on these points.

¶ 47    The State analogizes the matter to *People v. Birks*, 2024 IL App (1st) 221664-U. In that case, the appellate court held that a postconviction petitioner failed to show a lack of culpable negligence for filing his petition late where on-the-record discussions positively rebutted the petitioner's claim that the trial court intimidated him into accepting a guilty plea agreement. *Birks*, 2024 IL App (1st) 221664-U, ¶¶ 38, 40-41. Here, by contrast, defendant's claim rests on allegations about his off-the-record conversations with his attorney.

¶ 48    We hold that defendant has pleaded facts that are not affirmatively refuted by the record and, if proven, would entitle him to postconviction relief. Accordingly, defendant is entitled to a third-stage evidentiary hearing on his amended postconviction petition.

¶ 49                                    III. CONCLUSION

¶ 50        For the reasons stated, we reverse the trial court's judgment and remand for a

third-stage evidentiary hearing on defendant's amended postconviction petition.

¶ 51        Reversed and remanded.