2025 IL App (1st) 231594-U

No. 1-23-1594

Order filed September 29, 2025.

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 1206 |
| | ) | |
| JUAN ROBINSON, | ) | The Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LAVIN delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the second-stage dismissal of defendant's postconviction petition, where postconviction counsel did not provide unreasonable assistance by failing to add to defendant's petition an as-applied proportionate penalties clause claim or ineffective assistance claims to avoid procedural default.

¶ 2    Following a bench trial, defendant Juan Robinson was found guilty of first degree murder, attempted murder, and aggravated discharge of a firearm, then sentenced to 66 years' imprisonment. Defendant now appeals the second-stage dismissal of his petition filed pursuant to

the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). He essentially argues that his privately retained postconviction counsel provided unreasonable assistance by failing to add to his petition an as-applied sentencing challenge under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). He also asserts that postconviction counsel was unreasonable for failing to assert that his trial and appellate attorneys were constitutionally ineffective for not raising the proportionate penalties claim. We affirm.

¶ 3                                    BACKGROUND

¶ 4      Defendant was arrested and charged with the aforementioned offenses after he and codefendant Keith Anthony shot into a crowd gathered on a street.[1] Briefly stated, the trial evidence showed that, prior to the shooting, there had been an ongoing feud between defendant and Quawon Stokes. After a particular falling out, Stokes had shot at the house of defendant's girlfriend. On April 6, 2012, Stokes, Jalen Armstrong, and a group of other individuals were near the intersection of 81st Street and Maryland Avenue, when defendant and codefendant Anthony appeared with guns. Defendant and codefendant Anthony shot at the group several times to retaliate against Stokes, but instead, killed Armstrong. The court found defendant guilty of the first degree murder of Armstrong, the attempted first degree murder of Stokes, and aggravated discharge of a firearm.

¶ 5      At the sentencing hearing, which took place on March 25, 2016, the court reviewed defendant's presentence investigation report (PSI), which reflected the following. Defendant was 22 years old at the time of the shooting and had four juvenile arrests: for battery at age 13, for car theft at age 15, and for trespass to a vehicle and marijuana possession, both at age 16. As an adult,

_____

[1]Codefendant Anthony is not a party to this appeal.

he was convicted in three prior cases of aggravated assault of an officer and unlawful use of a weapon, burglary, and criminal damage to property. Notwithstanding these crimes, defendant reported that he had never been a gang member. He stated he "always" had "a good relationship" with his parents and siblings, that no one in his family had a drug or alcohol problem, and that his parents "always worked and took care of their children." There was no abuse or neglect in his home. Defendant's high school career ended due to his prior incarceration. When arrested in this case, he was self-employed in the music business and had been since a teenager, but he had no other job history. He was treated in 2012 for a minor gunshot wound but recalled no other history of serious injury or illness, and he had never required or received mental health treatment or counseling.

¶ 6    In aggravation, the State called Armstrong's mother and sister, who both read their victim impact statements into the record. The State argued that defendant should be given "far more" than the minimum, recounting defendant's criminal history and emphasizing that Armstrong was an "innocent victim" who was "in the wrong place at the wrong time with the wrong people."

¶ 7    Defendant's counsel argued in mitigation that defendant grew up "in a difficult environment on the south side of Chicago." While there was "no evidence" that defendant was in a gang, he had been "intermittently in trouble." Counsel argued that defendant nonetheless also had "done good things with his life." Counsel stated that defendant had worked and had a child who lived with his mother in Peoria because defendant "[got them] out of the south side."

¶ 8    The court sentenced defendant to 66 years in prison, which included 40 years for murder, 26 years for attempted murder, to be served consecutively, and 10 years for aggravated discharge of a firearm, to be served concurrently. The sentences for murder and attempted murder included

a statutorily mandated 20-year firearm enhancement, respectively. The court stated the case was "sad," and it knew "there are some rhythm[s] on the street and feelings that if somebody does something to you, the only thing to do is retaliate in kind" by "settl[ing] it on your own." Yet, Armstrong, the murder victim, had "nothing to do with these problems" and was an "innocent bystander." The court noted defendant's criminal history and stated that defendant had to take personal responsibility for what he did.

¶ 9     The court denied defendant's motion to reconsider his sentence, which alleged that defendant's sentence was excessive given his "lack of background," that his consecutive sentencing for attempted murder was excessive given that Stokes suffered no injuries, and that his firearm enhancement, as applied to both his murder and attempted murder convictions, constituted an "improper double enhancement."

¶ 10    On direct appeal, defendant's counsel asserted that the evidence at trial was insufficient to prove defendant guilty of murder. Direct appeal counsel also requested that this court remand the case so defendant could file a motion in the circuit court challenging the calculation of his presentence custody credit. This court remanded the case so that defendant could challenge his credit but otherwise affirmed the circuit court's judgment. *People v. Robinson*, 2019 IL App (1st) 170010-U.

¶ 11    On September 8, 2020, through private counsel, defendant filed a postconviction petition.[2] In relevant part, postconviction counsel alleged in the introduction section that the 20-year firearm enhancement, "as applied to [defendant's] murder conviction," violated the proportionate penalties

_____

[2]The record reflects that two attorneys at the same firm, Jennifer Blagg and Eric Bisby, filed defendant's postconviction petition together on his behalf and represented him throughout the postconviction proceedings.

clause. In the analysis section, however, counsel elaborated that the enhancement was unconstitutional because it required courts to issue a *de facto* life sentence (or at least 40 years) in all cases where the offenders committed murder with a firearm. Notably, in *People v. Buffer*, 2019 IL 122327, ¶ 41, our supreme court held that a prison sentence of 40 years or less does not constitute a *de facto* life sentence. Counsel further alleged the enhancement shocked the moral sense of the community because it prohibited trial court judges from meaningfully considering mitigating evidence and subjected "all defendants" to a *de facto* life sentence. Defendant did not offer any facts in support of an as-applied challenge or further elaborate on that claim.

¶ 12    On October 2, 2020, the court dismissed the petition "without prejudice," as it was waiting for the Illinois Supreme Court to rule on *People v. House*, 2021 IL 125124. Defendant appealed while the postconviction proceedings were pending. On the parties' motion, this court dismissed the appeal for lack of jurisdiction and remanded for second-stage postconviction proceedings, concluding that the circuit court failed to properly rule on or dismiss the petition within 90 days of docketing it. *People v. Robinson*, No. 1-20-1174 (2021) (dispositional order).

¶ 13    As such, on August 26, 2021, the circuit court docketed the petition for second-stage proceedings.[3] On June 2, 2022, defendant's postconviction counsel filed a certificate under Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), notwithstanding that she was already privately retained. In the certificate, counsel represented that she had consulted with defendant by mail and telephone to ascertain his contentions and examined the report of proceedings and court file from defendant's trial, including police reports and other documents provided by defendant. Counsel

---

[3]When docketing defendant's petition for second-stage postconviction proceedings, the circuit court also ordered a public defender to be assigned to defendant. The parties do not dispute, however, that defendant had already retained private counsel, who continued to represent defendant at the second stage.

certified that no amendments were necessary to adequately present the claims in defendant's first-stage petition, which counsel previously filed. Counsel thus rested on the first-stage petition.

¶ 14 The State filed a motion to dismiss, arguing in relevant part that defendant's 20-year firearm enhancement was constitutional, as Illinois courts had already ruled that the "general application" of the firearm enhancement did not violate the proportionate penalties clause. The State did not argue forfeiture. The trial court dismissed the case on the merits.

¶ 15 Defendant timely appealed.

¶ 16                                       ANALYSIS

¶ 17 Defendant now contends his privately retained postconviction counsel provided unreasonable assistance because counsel omitted relevant claims in the second-stage petition. There is no constitutional right to the assistance of counsel in postconviction proceedings, as the right to counsel is "a matter of legislative grace." *People v. Custer*, 2019 IL 123339, ¶ 30. Thus, postconviction petitioners are entitled only to "the level of assistance guaranteed by the Act," which has been judicially deemed to be a "reasonable" level of assistance. (Internal quotation marks omitted.) *Id.* This standard is "significantly lower than the one mandated at trial by our state and federal constitutions." (Internal quotation marks omitted.) *People v. Huff*, 2024 IL 128492, ¶ 21. The reasonable assistance standard applies where, as here, defendant privately retains postconviction counsel. *People v. Williams*, 2025 IL 129718, ¶ 43. "Whether counsel has provided a reasonable level of assistance will necessarily depend on the unique facts of each case." *Id.* We review *de novo* whether postconviction counsel provided reasonable assistance. *People v. Madison*, 2023 IL App (1st) 221360, ¶ 35.

¶ 18    At the outset, we note defendant apparently believes that the Rule 651(c) certificate his postconviction counsel filed creates a rebuttable presumption that counsel provided reasonable assistance. See *Custer*, 2019 IL 123339, ¶ 32 (noting, appointed postconviction counsel may create that presumption by filing a Rule 651(c) certificate). Yet, Rule 651(c) only applies to defendants who file their first-stage petition *pro se* and who are appointed counsel at the second stage. See *People v. Johnson*, 2018 IL 122227, ¶ 18 (citing *People v. Cotto*, 2016 IL 119006, ¶ 41); see also *People v. Perkins*, 229 Ill. 2d 34, 44 (2007) (the purpose of Rule 651(c) is to ensure that counsel shapes the petitioner's *pro se* claims into proper legal form and presents those claims to the court). Here, privately retained counsel represented defendant on his first-stage, initial postconviction petition, and so counsel is not entitled to the presumption of reasonable assistance at the second stage. See *People v. Crawford*, 2025 IL App (1st) 221749-U, ¶ 29 (where Rule 651(c) does not apply, we need not afford the rebuttable presumption of reasonable assistance, as "it is the filing of a Rule 651(c) certificate that creates the rebuttable presumption.").[4] Defendant's claim in that regard, which is against his own interests, fails.

¶ 19    Even absent the presumption, however, nothing bars us from crediting the statements private counsel made in the Rule 651(c) certificate, which support a finding of reasonable assistance. The record further demonstrates that to be the case. See *Cotto*, 2016 IL 119006, ¶ 42 (privately retained postconviction attorneys are still governed by a general standard of reasonable assistance). When evaluating postconviction counsel's performance where counsel was privately retained at the first stage, Illinois courts have applied a "*Strickland*-like analysis." *People v.*

---

[4]Cited as persuasive authority under Illinois Supreme Court Rule 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered under Rule 23(b) on or after January 1, 2021, may be cited for persuasive purposes).

*Zareski*, 2017 IL App (1st) 150836, ¶¶ 58-61. Under this analysis, we evaluate whether the defendant has demonstrated prejudice and, more specifically, "whether there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 162. The purpose of this standard is to "prevent pointless remands to trial courts for repeated evaluation of claims that have no chance of success." *Zareski*, 2017 IL App (1st) 150836, ¶ 59. Defendant cannot establish that he was prejudiced by privately retained counsel's representation for the reasons to follow.

¶ 20    Although at times unclear, defendant appears to argue that postconviction counsel should have added an as-applied proportionate penalties challenge to his petition, attacking the mandatory firearm enhancement. We note that although counsel briefly mentioned an as-applied challenge in the petition, counsel never fully developed it. See *People v. Thompson*, 2015 IL 118151, ¶ 36 (discussing difference between as-applied and facial constitutional challenges). Generally, a sentence violates the proportionate penalties clause if "the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community." (Internal quotation marks omitted.) *People v. Williams*, 2024 IL 127304, ¶ 24. In evaluating this standard, a court reviews "the gravity of the defendant's offense in connection with the severity of the statutorily mandated sentence within our community's evolving standard of decency." (Internal quotation marks omitted.) *People v. Hilliard*, 2023 IL 128186, ¶ 20. In bringing an as-applied challenge to a sentencing statute, a defendant must overcome the presumption that the statute is constitutional by clearly establishing that the statute is invalid as applied to him. *Id.* An as-applied constitutional challenge to a sentence presents a legal question reviewed *de novo*. *People v. Johnson*, 2018 IL App (1st) 140725, ¶ 97.

¶ 21 Following our *de novo* review, we conclude such a claim would fail in defendant's case. Our supreme court in *Hilliard* recently rejected a defendant's as-applied proportionate penalties challenge to a similar mandatory 25-year firearm enhancement. *Hilliard*, 2023 IL 128186. In *Hilliard*, the defendant was an emerging adult offender (age 18) when he committed attempted murder with a firearm. *Id.* ¶ 1. The court held the defendant could not overcome the presumption that the enhancement was constitutional as-applied. *Id.* ¶¶ 21, 40. Among the cited reasons, the court noted that the new juvenile sentencing laws (730 ILCS 5/5-4.5-105(b) (West 2024)), giving courts discretion to apply the enhancement, were not retroactive and applied only to *juveniles*. *Hilliard*, 2023 IL 128186, ¶ 38. The court observed, "[t]he distinction between a juvenile and adult remains significant." *Id.* ¶ 39. The court added that the more lenient parole provisions for young adults under 21 also were not retroactive. See *id.* ¶ 36 (citing 730 ILCS 5/5-4.5-115 (West 2022). The court held that this new sentencing law merely reflected a "policy change," and that the 25-year enhancement was not itself "abhorrent to the community's moral standards." *Id.* ¶ 39. *Hilliard* further considered that the defendant in that case chose to fire multiple close-range shots at the victim without demonstrated provocation in an attempt to kill him. *Id.* ¶ 40. It concluded the defendant's 40-year sentence was "not even arguably" cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *Id.*

¶ 22 Here, defendant's 40-year sentence for murder and consecutive 26-year sentence for attempted murder, both of which included mandatory 20-year firearm enhancements, also did not shock the community's moral sense. It is undisputed that defendant received the statutory minimum sentence for both offenses.[5] Both sentences were also statutorily mandated to run

---

[5]Defendant's 40-year sentence for first degree murder included the statutory minimum sentence of 20 years (730 ILCS 5/5-4.5-20(a) (West 2010)), plus a mandatory 20-year enhancement for personally

consecutively to one another.[6] See 730 ILCS 5/5-8-4(d)(1) (West 2012). Thus, defendant's total 66-year sentence was the lowest sentence permitted by statute.[7] See *Hilliard*, 2023 IL 128186, ¶ 21 (the legislature has the power to prescribe penalties for defined offenses, and that power necessarily includes the authority to prescribe mandatory sentences).

¶ 23 That sentence was hardly disproportionate given the severity of the crime here, where defendant and his codefendant both shot multiple times into a crowd on a public street, aiming to murder Stokes in revenge and striking a bystander instead. Defendant, who came from a stable and loving home, had no basis other than his own criminality for his actions. Thus, his sentence totaling 66 years was proportionate to the crimes for which he was found guilty. See *People v. White*, 2025 IL 129767, ¶ 43 (40-year sentence was proportionate to the offense, where the defendant was a 20-year-old adult offender who personally shot and killed an unarmed victim).

¶ 24 Citing *People v. Leon Miller*, 202 Ill. 2d 328 (2002), defendant insists the trial court should have found an as-applied proportionate penalties violation here and then imposed a sentence below the statutory minimum on that basis. The present case hardly resembles the "rare convergence" of factors seen in *Leon Miller*, where the defendant was a 15-year-old juvenile, tried as an adult for

---

discharging a firearm during the commission of the offense (730 ILCS 5/5-8-1(d)(ii) (West 2012)). Similarly, his 26-year sentence for attempted murder included the statutory minimum sentence of 6 years (730 ILCS 5/5-4.5-25(a) (West 2012)), plus a mandatory 20-year firearm enhancement (720 ILCS 5/8-4(c)(1)(C) (West 2010)).

[6] Courts have held that consecutive sentencing determines only the manner in which a defendant will serve sentences for multiple offenses but does not constitute an increase in penalty implicating the proportionate penalties provision. *People v. Phelps*, 211 Ill. 2d 1, 14 (2004); *People v. Hawkins*, 409 Ill. App. 3d 564, 573-74 (2011); see also *People v. Wilson*, 2019 IL App (4th) 170570-U, ¶¶ 36-39.

[7] Defendant also received a sentence of 10 years for aggravated discharge of a firearm, a Class 1 felony. See 720 ILCS 5/24-1.2(a)(2), (b) (West 2012) (aggravated discharge of a firearm is Class 1 felony where the defendant discharges a firearm in the direction of another person); 730 ILCS 5/5-4.5-30(a) (West 2012) (4-to-15-year sentencing range for Class 1 felonies). Because that sentence was to run concurrently with his other sentences, it did not affect the total 66 years that defendant was to serve.

murder under an accountability theory, who participated in the murder only as a look-out, yet was subject to a mandatory sentence of natural life imprisonment. (Internal quotation marks omitted) *Hilliard*, 2023 IL 128186, ¶ 33; see also *Leon Miller*, 202 Ill. 2d at 341-43. As set forth, defendant was not minimally culpable, and he was an adult when he chose to shoot the bystander victim and attempt to shoot his rival. For the reasons stated, defendant's as-applied challenge fails.

¶ 25    Because defendant has failed to show postconviction counsel could have raised a viable as-applied challenge to his sentence, he cannot establish prejudice, *i.e.*, "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Ayala*, 2022 IL App (1st) 192484, ¶ 162. Without a meritorious underlying sentencing claim, he also cannot show that he was prejudiced by any failure of trial or direct appeal counsel to raise the claim previously. See *People v. Pitsonbarger*, 205 Ill. 2d 444, 465 (2002). By extension, defendant cannot show he suffered prejudice when postconviction counsel declined to add those ineffective assistance claims. See *Ayala*, 2022 IL App (1st) 192484, ¶ 162.

¶ 26    Nonetheless, defendant argues that, based on *People v. Addison*, 2023 IL 127119, remand is necessary. In *Addison*, our supreme court held that, where postconviction counsel omitted ineffective assistance claims that were necessary to avoid procedural default, remand was required regardless of the petition's merit, specifically because postconviction counsel failed to comply with Rule 651(c). *Id.* ¶ 42. While defendant maintains the same is true here, we find his reliance on *Addison* is misplaced for several reasons.

¶ 27    First, as set forth, Rule 651(c)'s requirements are inapplicable here, where privately retained counsel filed defendant's first-stage petition. See *People v. Perry*, 2024 IL App (1st) 230167-U, ¶ 29 (applying the "*Strickland*-like analysis" set forth in *Zareski* and finding *Addison*

inapplicable, where Rule 651(c) did not apply).[8] Second, *Addison* presented an "unusual situation" not present here because the postconviction counsel there "made the *pro se* petition worse" by removing the ineffective assistance claims that the defendant had originally pled in his *pro se* petition. *Id.* ¶ 24. Third, *Addison* expressly found that the defendant was prejudiced by his counsel's omission because the circuit court found his postconviction claims were forfeited. *Id.* ¶ 42. Here, defendant cannot show he was prejudiced because the court addressed his claims on their merits when dismissing his petition. See *Cotto*, 2016 IL 119006, ¶ 50. Accordingly, we are not bound by *Addison* to remand this matter regardless of the merits of defendant's underlying sentencing claim.

¶ 28                                    CONCLUSION

¶ 29    For the foregoing reasons, we find defendant has failed to show that postconviction counsel provided unreasonable assistance, either by failing to add an as-applied proportionate penalties clause claim or by failing to add ineffective assistance claims to avoid procedural default. *Zareski*, 2017 IL App (1st) 150836, ¶ 59. We therefore affirm the judgment of the circuit court.

¶ 30    Affirmed.

---

[8] Cited as persuasive authority under Rule 23(e)(1).